## Wilson, et al. v. Hall.

(Decided November 20, 1912.)

### Appeal from Leslie Circuit Court.

Equitable Actions—Finding of Chancellor.—In an action of trespass to try title, evidence examined and held that the chancellor's finding should have been in favor of plaintiffs.

J. M. BICKNELL, D. K. RAWLINGS and H. M. BROCK for appellants.

CLEON K. CALVERT for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

On the first or second day of October, 1897, Hiram Fee was arrested and placed in the Leslie County jail at Hyden, Kentucky, on the charge of having murdered one Robert Asher. He employed J. M. Bicknell and Judge William Lewis, members of the Leslie County

bar, to defend him. Their fee was fixed at $150. To secure them in the payment of the fee, Hiram Fee and wife executed and delivered to them a mortgage on the tract of land in controversy. Bicknell and Lewis performed the services contemplated by their contract of employment. On December 26, 1898, they brought suit in the Leslie Circuit Court to enforce their mortgage lien. The land was sold and appellants became the purchasers. Subsequently a deed was executed to them by the master commissioner of the Leslie Circuit Court. In the fall of 1904, appellee, Hall, began to cut and remove the timber from the land in question. On November 24, 1904, appellants brought this action against appellee to restrain him from trespassing on the land. Appellee answered, denying appellant's title, and pleaded title in himself. Appellants filed a reply, pleading that appellee and wife had executed a deed to the land to Hiram Fee, and that this deed had been burned before it was recorded; that appellee was in Hyden prior to the time the mortgage was executed, and stated to Messrs. Bicknell and Lewis that he and his wife had made the deed to Fee and wife, and that it would be all right for them to take the mortgage; that by reason of these facts, appellee was estopped to claim the land. On the first trial of the case the chancellor rendered judgment in favor of the appellee. On appeal to this court, the judgment was affirmed. Wilson, et al. v. Hall, 101 S. W., 889. Thereafter appellants brought suit against Hall for the purpose of securing a new trial. They alleged in their petition that after the affirmance of the case they had learned for the first time of several witnesses by whom they could prove that Hall had made the deed to Hiram Fee, and that the deed had been burned in Hiram Fee's house. Hall filed an answer controverting the allegations of the petition. Proof was taken, and on final hearing, the trial court granted a new trial. From that judgment an appeal was prosecuted to this court. In that proceeding, appellants proved by John Fee, a brother of Hiram Fee, that Hall and wife, in the year 1896, executed, acknowledged and delivered to Hiram Fee a deed to the land in controversy. R. L. Fults testified that he saw the deed. Speaking of the evidence given by these witnesses, this court said: "The testimony of the witnesses is so circumstantial that it impresses one with its sincerity, and if the deed was made to Hiram Fee, it was not Hall's

land. The judgment granting the new trial was affirmed. Hall v. Wilson, et al., 116 S. W., 244.

On the return of the case additional testimony was taken, and on final hearing the chancellor entered judgment in favor of appellee. From that judgment this appeal is prosecuted.

The proof in the case as now presented is in substance as follows:

J. M. Bicknell and William Lewis both say that they were employed to represent Hiram Fee. They were to receive $150 for their services. Not desiring to undertake the employment until their fee was secured, they approached Hiram Fee on the subject of security. He stated that he owned the tract of land in question. That appellee and his wife had deeded the land to him and his wife, and that the deed had been burned when his house was destroyed. Appellee was in Hyden before the examining trial, and consulted them several times with reference to the defense of his son-in-law. In order to assure themselves that Hiram Fee's statements were correct, they talked to appellee with reference to the deed. He stated in substance that he had made the deed in question, that the title was in Hiram Fee and his wife, who had a right to make a mortgage, and that the attorneys need not be afraid to take the mortgage. Their statement is corroborated by the evidence of L. D. Lewis, who claims to have been present when the conversation took place. Lillie Witt, who stayed with G. W. Morgan at the time Hiram Fee was in jail, says that he saw appellee in Hyden before Fee's examining trial. John Fee, a brother of Hiram Fee, says that he was present when the deed from Hall and wife to Hiram Fee and wife was executed, acknowledged and delivered. James Sizemore says that about six months before Hiram Fee killed Robert Asher, he swapped coats with Fee. There were some papers in the pocket which he took out and handed to Fee who remarked that one of the papers was his land deed. He also says he stayed all night with Fee the night before Fee killed Robert Asher. On the next day he heard Fee say he had gotten his land deed burned up, but he was not uneasy about the old man making him another. Henry Sizemore says that he had a conversation with appellee, William Hall, after Hiram Fee had been tried and sent to the penitentiary for the killing of Robert Asher, concerning the Ridner's branch

land, which is the land in controversy. Hall stated that it went off as a lawyer's fee; that he had deeded it to Hi Fee, and that it went off in that trouble in the killing of Robert Asher.

Opposed to this testimony is the testimony of Hall that he was not in Hyden at all on the occasion in question, and did not make any representations to the attorneys with reference to the deed. Some six or seven witnesses testified that he was not present at the examining trial of Hiram Fee. He also introduces several witnesses who claim to remember that a day or two before the examining trial, which occurred about 14 years before they testified, they saw Hall on his way to Harlan, and he said he was going to Harlan. Some three of four witnesses also testified that Hiram Fee, at the time of the execution of the mortgage, was not living on the land in controversy and had not been for sometime. He had left it and gone to another tract which he had purchased from Jane Hall. He gave as his reason for leaving the land in controversy that his father-in-law had declined to give him and his wife a deed to it.

The veracity of William Fultz and one of the Sizemores is impeached, and the veracity of two or three of appellee's witnesses is also impeached. While an attempt was made to impeach John Fee, the attempt was not very successful.

The fact that appellee, Hall, was not in Hyden on the day of the examining trial is immaterial. This may be true, and yet he may have been there before the examining trial, and may have made the statements attributed to him by the attorneys. The testimony of the numerous witnesses who say that about 14 years prior to the time they testified, and on a day or two before Fee's examining trial, they saw Hall on his way to Harlan is of little probative value. We have the testimony of four persons who say he was in Hyden before the examining trial, and the testimony of three witnesses, who are unimpeached, to the effect that he said that he had deeded the land to Fee and wife, and that the attorneys need have no fear about taking the mortgage, as the title was in them. As to the execution of the deed, John Fee's evidence is very convincing, and the circumstances rather favor the appellants. Hiram Fee was appellee's son-in-law. Naturally appellee was interested in seeing that he was properly defended. It is much more reasonable to con-

clude that he went to Hyden for that purpose than that he remained away at such a time. If the appellee made the deed in question, the title passed from him. On the other hand, if he represented to the attorneys that he had made the deed, and that the title to the land in controversy was in Hiram Fee and wife, and they, on the faith of these statements, accepted the mortgage and performed the services, he is estopped to assert the contrary. Amyx, &c. v. Hurt, 24 R., 291; Wright v. Williams, 25 R., 1377. Upon each of these propositions we conclude that the weight of the evidence is with the appellants, and our mind is no longer in doubt as to the character of judgment that should be entered.

Judgment reversed, and cause remanded with directions to enter judgment in favor of appellants.