## Hall, et al. v. Hall, et al.

(Decided November 1, 1921.)

### Appeal from Floyd Circuit Court.

1. Lost Instruments—Establishment—Evidence—Sufficiency.—Evidence in an action for the restoration of a lost deed held sufficient to show its execution and former existence.

2. Pleading—Allegations as to Deed—Demurrer—Motion to Make More Specific.—A failure to state the exact time, even when it is material, will not always be a ground of demurrer, if the facts alleged show that the cause of action had accrued before the bringing of the suit. Such a defect should generally be reached by a rule upon the party to make his allegation as to time more definite and certain.

3. Lost Instruments—Date and Time of Execution—Pleading.—Sufficiency.—An allegation in a petition for the restoration of a lost deed, that the deed was executed about fifteen years before the filing of the petition, was sufficient as to time, in the absence of a motion to make more specific, since, if the other allegations of the petition were true, plaintiffs were entitled to recover, regardless of the date of the deed or the time of its execution.

4. Lost Instruments—Pleading—Consideration—Sufficiency of Petition Failing to State Amount of Consideration.—Where the petition in an action for the restoration of a lost deed stated that the entire purchase money had been paid, the amount of the consideration was not material, and the petition was not bad on demurrer because the amount was not stated.

HAMILTON & WALLACE for appellants.

A. J. MAY and W. P. MAYO for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Ellender Hall, widow, and Sallie Hall and others, children of Alexander Hall, deceased, brought suit against Tipton Hall and Polly Hall to compel them to restore a lost deed which they allege that the defendants had executed to Alexander Hall in his lifetime. The chancellor granted the relief asked and defendants appeal.

It appears that Alexander Hall and Tipton Hall were brothers, and that Alexander always desired to live near his brother. In the first place they lived on Dry Branch, in Floyd county, and when Tipton Hall moved to Mink Branch of Big Mud Creek, Alexander followed him and purchased a small place. Afterwards, Tipton Hall moved to Tollars Creek and bought a large tract of land. Not long thereafter, Alexander Hall sold his farm on Big Mud Creek with a view of following his brother, Tipton,

and locating on Tollars Creek. The consideration was $225.00 cash and a yoke of oxen valued at $75.00. The sale was negotiated by Tipton Hall, and the entire consideration paid to him. Upon the completion of the sale Alexander Hall and his family moved on the tract of land in controversy, it being a portion of the land which Tipton Hall owned. Ellender Hall testified that the consideration which her husband received for his land on Big Mud Creek was paid to Tipton Hall for the land in controversy, and Tipton Hall and wife made her husband a deed to the property. The deed was made on Big Mud Creek and John Hamilton took the acknowledgment. Her husband afterwards delivered the deed to Tipton Hall and asked him to have it recorded. He gave his brother the last fifty cents he had for that purpose, and told him he would pay the balance when he came back. They were at their home when her husband gave the deed to Tipton. Afterwards Tipton denied making the deed. Later on he said that he would burn the deed or tear it up before she should have it. Some time later he came to her house and told her that the big question was settled, "It is into ashes." Immediately after the execution of the deed, she and her husband and children moved on the land and had been in possession of it ever since. On cross-examination she stated that she could not read, but that she tied a blue string around the deed and afterwards Fanny Sturgill read it to her two or three times. Andrew Hall, a son of Alexander Hall, testified that his father made a trade with Tipton by which he was to pay the proceeds of the land on Big Mud Creek to Tipton for the place on Tollars Creek. He was present when they started to make the deed, but the mare broke the bridle and he went on and did not see them make it. Afterwards his father brought the deed home. Later on his father delivered the deed to Tipton Hall and gave him fifty cents to pay on the charges for having it recorded. Some time later, Tipton Hall told him and his mother that he had the deed in his trunk. His father lived on the land about fifteen or sixteen years. On another occasion Tipton Hall told him and his mother that the deed was in ashes. He heard the deed read by Fannie Sturgill once and Belle Sturgill another time. The deed was from Tipton Hall and wife to Alexander Hall and wife. Mrs. Nannie Gross, who was not related to any of the parties, testified that about six years before she gave her testimony, and prior to Alexander Hall's death, she heard

Tipton Hall say that he had made a deed to Alexander Hall and reserved the board trees. Since that time she had talked to him several times about the deed. She remembered that he said that little John Hamilton had written the deed that he made to Alexander and Sissy. He further said that he forgot to put the deed on record; that he didn't know where it was, but if they would look among little John's papers they might find it. Sid Salisbury, who had been divorced from one of Tipton Hall's daughters, testified that, after the death of Alexander Hall, he went to Tipton Hall's to see his children who were staying there, and that Tipton came to the door and told him he wanted him to look through his papers "for poor Alex's deed;" that it was never recorded, but should be. He found a deed but did not know whether it was the deed in question or not. Jess Salisbury, father of Sid Salisbury, deposed that, at the time uncle Alex died, he had a conversation with Tipton Hall, who said that he had made Alex a deed but did not know whether it was recorded or not; that he was going to Prestonsburg to find out, and if it was not recorded, it would have to be for the children. After that, Tipton Hall said that he could not find Alex's deed anywhere on record, and that he must have given it to little John Hamilton. B. L. Sturgill stated that while they were *en route* to dig the grave after the death of Alex, Tipton Hall stated that if some one did not see about it, the family of Alex Hall would soon run through the tract of land that Alex had left them. Mrs. Mary Porter deposed that she had heard Tipton Hall say, in the presence of others, that Alexander Hall had given him back the deed. Tipton further stated that he intended to see that the two youngest heirs were not wronged; that he aimed to make them a deed. Press Tackett stated than on one occasion he bought some timber from Alex Hall and that he supposed Tipton Hall knew about it. Emmett Hamilton testified that he bought Alex Hall's farm on Mink Branch of Big Mud Creek from Tipton Hall; that Alex and his wife made the deed, but that he paid the purchase price on the land to Tipton. William Hamilton, father of Emmett Hamilton, corroborated his son as to the purchase of the Alex Hall farm and his paying the consideration to Tipton Hall, and he further stated that the land on Mink Branch was of about the same value as the tract of land on Tollars Creek. There was also introduced in evidence two deeds

made by Tipton Hall and wife, conveying certain tracts of land and calling for Alexander Hall's line.

On the other hand, Tipton Hall testified that he never executed any deed to Alexander Hall and wife; that he and his brother had no contract about the land, but that he told his brother just to come on and live on it his lifetime. He further stated that he gave his brother the $225.00 which he received from Emmett Hamilton, and when he told Alex that he had to take in a yoke of cattle on the place, Alex said, "Just keep the cattle yourself." On cross-examination he stated that Alex Hall did not pay him anything for the land, though in his answer he swore that he received the oxen in consideration of giving Alex Hall the right to live on the land his lifetime. He further denied that he had made any statements about having made Alex a deed. Polly Hall, his wife, swore that she had never joined her husband in a deed to Alex. Her husband, Tipton Hall, received the money and the oxen for Alex Hall's land. He paid the money to Alex, but kept the oxen. When Alex made any deal he generally consulted Tipton. Joe Hamilton, who, Ellender Hall says, was present when the deed was executed, said he had no recollection of it. Wilburn Hall, son of Tipton Hall, swore that he heard his uncle Alex say that he had no land, that it belonged to Tipton Hall. Joe Hall testified that on one occasion his uncle Alex told him that he was going to Tipton Hall and give him up the land and stay with Tipton all the time, so that he could put anybody in the house he wanted to. He further stated that Alex got him to cut some ties and told him not to cut any of the good timber, as that belonged to Tipton after his death. Morgan Hall, a brother-in-law of Alex Hall and Tipton Hall, testified that Alex Hall had told him that the land was Tipton's, and asked him where he could buy a little piece of land of his own. Duran Hall swore that Alex Hall told him that he could not sell the land on which he lived, but Tipton would let him live there as long as he lived.

It is conceded by appellants that courts of equity have jurisdiction to restore or supply lost instruments, but insisted that the evidence in this case does not come up to the requirements of the rule that the execution and former existence of the instrument shall be clearly established. If we had to rely solely on the disputed testimony, we might have some doubt as to the propriety of the judgment, but when this testimony is supplemented

by certain admitted facts and circumstances, a different case is presented. In the first place, Alexander Hall and Tipton Hall were brothers, and their relations were so cordial that whenever Tipton would sell his home and move away, Alexander would soon follow him and acquire a new home in the same vicinity. The evidence is uncontradicted that Alexander sold his home on Big Mud Creek for $225 cash and a yoke of oxen valued at $75.00, and not only that the trade was made by Tipton, but that the entire consideration was paid to him. The circumstances plainly indicate that Alexander's purpose in selling his home was to acquire a new home near his brother. The land which he sold was of about the same value as the land in controversy. Tipton claims that he merely gave Alex a right to occupy the land for his lifetime. While claiming that he returned to Alex the cash consideration which he had received for the sale of Alex's farm on Big Mud Creek, he admits that he retained the oxen and says that Alex told him to just keep the oxen. In other words, he claims the oxen as a gift from Alex. In this statement he is not corroborated by a single witness or a single circumstance. It is highly improbable that Alex would have disposed of his own home and not used the proceeds as he had done before, for the purpose of buying a new home, and that a person in his poor circumstances would have given the yoke of oxen to his brother who was much better off than he was. Furthermore, it is difficult to believe that Tipton Hall would have sold off two pieces of land adjoining the land in question, and have described certain boundary lines as running to or parallel with the line of Alexander Hall, if, as a matter of fact, Alexander Hall owned no land in that vicinity, and his lines were not fixed in some way other than by an oral agreement permitting him to occupy the land during his lifetime. Indeed, the natural and reasonable conclusion to be deduced from all these circumstances is that Alexander Hall sold his farm on Big Mud Creek, and that in consideration of the proceeds, Tipton Hall conveyed to him the land in question. But in addition to these persuasive circumstances, we have the positive evidence of Mrs. Hall that the deed was executed, and though her evidence is somewhat weakened by the fact that she could not read, this defect is supplied by the fact that she tied a string around the deed and the deed was afterwards read to her by another, which statement is corroborated by the testimony of her son.. Further-

more, it is shown by one witness after another, some of whom, at least, were entirely disinterested, that Tipton Hall spoke of having made a deed to Alex and referred to the land as belonging to Alex. Opposed to this testimony is the statement of Tipton Hall that he merely gave Alex Hall the right to occupy the land during his lifetime, and that Alex Hall made him a present of the yoke of oxen, accompanied by a similar statement from his wife, and by statements of Tipton Hall's children and others, that Alex said that the land belonged to Tipton and that he had only a life estate therein. On the whole, we conclude that the evidence of the execution and former existence of the deed was sufficient to meet the requirements of the rule, and that the chancellor did not err in giving the relief prayed for.

But appellants insist that the petition did not state a cause of action, because it failed to allege the date of the deed, or the time of its execution, and the amount of the consideration. A failure to state the exact time, even when it is material, will not always be a ground of demurrer, if the facts alleged show that the cause of action had accrued before the bringing of the suit. Such a defect should generally be reached by a rule upon the party to make his allegation as to time more definite and certain. Newman on Pleading and Practice, section 218b. If the other allegations in the petition were true, plaintiffs were entitled to a restoration of the deed regardless of its date or the time of its execution. The petition alleged that the deed was executed about fifteen years prior to the filing of the petition. This was sufficient, in the absence of a motion to make more specific. While the petition does not state the amount of the consideration, it does allege that the full purchase price was paid. That being true, the amount of the consideration was not material, and the petition was not bad on demurrer because the amount was not stated.

Judgment affirmed.