## Holliday v. Holliday.

(Decided April 28, 1931.)

H. H. SMITH and ADAM CAMPBELL for appellant.

C. A. NOBLE for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

In this case the trial court adjudged that the appellee, Larkin Holliday, was an equal partner with the appellant, Belle Holliday, in a mercantile business and the joint owner of certain real estate, title to all of which property has been held in the appellant's name. The decision involves primarily questions of fact.

We state the evidence submitted by the plaintiff upon which he has successfully maintained his claims. Prior to October, 1925, the appellant's husband, Sherman Holliday and his brother, Chester, had conducted a store at Tribby in Perry county. The stock was very small, worth probably $40 or $50. It had been closed under an attachment. The appellee, Larkin Holliday, another brother of Sherman, and who was then about 25 years old and living elsewhere, was sent for. He testified it was verbally agreed between the appellant and her husband, on the one side, and himself on the other, that they should embark upon another similar enterprise. Larkin advanced $28 in cash and had a wagon and team. He also bought a little merchandise, and additional stock was purchased on credit. He was to do the hauling for the store and for others in the vicinity and to contribute his time and labor. All the revenue produced by his outside labors went into the coffers of the store. No claim was made that Mrs. Holliday was financially interested in this reopening until about a year afterward, when they had about $1,700 in cash and a considerable sum in accounts, some live stock, and some merchandise which they moved to Ball Fork, in Knott county. There they built a small storehouse on some land of Mrs. Holliday's father. Larkin helped in the erection of the building. It was agreed again that his interest in the business was one-half, and he says that he was promised several times that a writing would be given him evidencing his interest in the business, which was, after the removal, being carried on in the name of Belle Holliday. The money had been placed in the bank in her name without his knowledge.

Later a parcel of land was purchased from Adam Messer, and title taken in the name of Belle Holliday, unknown to him. A larger storehouse was erected on it and the store established therein. A note for $1,000 was given to Adam Campbell, with Mrs. Holliday's father

and uncle as surety, and the sum thus raised was paid for the land; but $500 later paid on that note came from the store, and a mortgage on the land was given to secure the balance. Another parcel of land was purchased from George Dodson for $500 which was paid for out of the business. Title to this property was taken in the name of Belle Holliday and Larkin Holliday.

He testified that he did the hauling for the store and for others, the revenue from which went into the joint business. He purchased merchandise and worked in and about the store. The parties lived together, even when residing in her father's home, and they all treated the business as jointly owned. Larkin testified that in November, 1929, Mrs. Holliday paid him $400, which she had borrowed from him, and when he demanded a settlement as a partner she denied that he had any interest in the business, but offered him $250 if he would sign over everything to her.

The cashier of the bank in which the account of Belle Holliday was kept testified that it was opened in her name in November, 1926, by a deposit of $1,502.25, which included a check of a mining company for $1,108.00 payable to "Holliday & Holliday."

Some consideration may be given the admission of Belle Holliday's husband made in a deposition in a case pending between two other brothers and himself, in which he testified that Larkin had put some money in the buisness at Tribby, and that when it was moved to Knott county the business was put in his wife's name, although Larkin owned a one-half interest. The incompetency of the evidence was waived by the failure to file written exceptions to it, as is required by sections 586, 587, of the Civil Code of Practice construed in Harrel's Adm'r v. Harrel, 232 Ky. 469, 23 S. W. (2d) 922; Anglo-American Mill Co. v. Phillips, 236 Ky. 246, 32 S. W. (2d) 994.

The defendant denied that the plaintiff had any interest whatever in the business. She claimed that he was but a hired hand, but does not claim he had been paid for his services, except that he lived with her family and withdrew some money for a trip or two away from home and for some work on his teeth. She says that the money with which the store at Ball Fork was started was accumulated by her alone through the sale of garden truck, poultry, and dairy products, and by the sale of molasses, fruit, etc., given to her by her father. She made

quite a sum on the increase of a hog he had given her and on miners' scrip which she purchased at 50 cents on the dollar. She bought the Messer property with money made by raising and dealing in cattle, sheep, and hogs. All of this money—some $1,700—had been kept sewed up in her stocking and a mattress, and her husband, who had failed in business, knew nothing about it. The check for $1,100 from the mining company which she had deposited was for scrip honored. It was payable to Holliday & Holliday, as it had been necessary to carry it in the name of the firm which had done business at Tribby. Larkin had nothing to do with it. She had no explanation as to why Larkin had given checks which showed that they were in payment of certain merchandise. The title to the Dodson lot was taken in the name of Larkin and herself because she felt she owed him that much for what he had done.

Mrs. Holliday's father and brother corroborated her evidence on some rather immaterial matters. Another witness corroborated her testimony that, when she repaid the $400 borrowed of Larkin (for which there was no written evidence), he only claimed that she owed him for the work he had done, and made no claim to any interest in the business.

Some witnesses testified that it was understood in the neighborhood that Larkin was interested in the business as a partner, and that he had so stated to them. Others testify that there was no such reputation in the community.

While the direct testimony is contradictory, there are reasonable inferences to be drawn which support the appellee's evidence and contention. It is not disputed that for three years this young man had labored industriously and loyally and occupied such a relation to the business as manifested a proprietary interest in it. It is not likely that he would have done so merely for his board and lodging. After he joined his sister-in-law and brother, their affairs, which had been unsuccessful, began to prosper. Other significant circumstances appear in support of his contention, while some of the evidence of the appellant does not smack of verisimilitude.

With respect to the interest in the Messer property, title to which was taken in the name of Belle Holliday, the terms of section 2353 of the Statutes do not affect the

equitable principle that where a grantee in a deed takes the title in his own name without consent of the person paying the consideration or in violation of some trust, the consideration having been paid with the effects of that person, there is a resulting trust in favor of such a one. The statute destroys the principle under other circumstances, but, when the transaction is such as indicated, it is essentially given statutory approval. Commonwealth v. C. & O. Ry. Co., 94 Ky. 16, 21 S. W. 342, 14 Ky. Law Rep. 681; Foushee v. Foushee, 163 Ky. 524, 173 S. W. 1115. It is not material that the agreement of the parties from which the ultimate result emanated was by parol. Chappel v. Hensley, 217 Ky. 749, 290 S. W. 705.

It is the well-established rule, however, that, before the courts will hold that there is a resulting trust under the circumstances named, the evidence of the facts must be clear and convincing. We regard the evidence on this case to be of that character. In our opinion it clearly shows that the appellee was an equal partner in the business conducted in the name of the appellant, and that the money which has been paid on the property came out of its funds. It is not denied that appellee was ignorant of the title being taken in the name of the appellant, as h says, nor that it was without his consent. When the appellant later disavowed that he had any interest whatever in the business, her act must be regarded as having been committed in violation of the trust reposed in her by his having consented to the business being carried on in her name individually.

The judgment being in accordance with these views it is affirmed.