# Arrington et al. v. Sizemore et al.

(Decided November 20, 1931.)

M. C. BEGLEY and CLEON K. CALVERT for appellants.

A. H. PATTON and J. M. MUNCY for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Reversing.

On November 17, 1928, Kate W. Arrington et al. (the heirs and devisees of Samuel L. Arrington, late of Rocky Mount, N. C.) sued Alice Erasmie Sizemore and Albert Sizemore for the possession of two tracts of land in Leslie county, aggregating about 45 acres, which we shall refer to as the McDaniel farm.

On December 1, 1928, the same plaintiffs filed a suit in equity against these same defendants, in which they sought an injunction to prevent the defendants from cutting and removing timber from this land.

On August 30, 1930, the parties filed a stipulation pursuant to which the first-named case was transferred to equity and consolidated with the second, and in this stipulation it was further provided:

"That the entire record in the case of Alice Erasmie v. W. G. Begley, lately pending in this court and in the Court of Appeals of Kentucky, may be and it is now made a part of the record in these consolidated causes and the parties may use such of these records as they desire to use on the trial of this case. The evidence therein so used shall be subject to the same exceptions filed by the parties thereto, and in the event of an appeal all rulings of the court thereon shall be subject to the objections and the exceptions saved on such rulings. The parties may file any additional exceptions they desire to file to said evidence or any portions of same."

This is in a sense a second appeal of this Begley case mentioned in this stipulation, and reference is now made to Begley v. Erasmie, 205 Ky. 240, 265 S. W. 833; Id., 273 U. S. 655, 47 S. Ct. 342, 71 L. Ed. 825. The defendants were successful, and Kate W. Arrington et al. have appealed.

We shall hereafter refer to Samuel L. Arrington simply as Arrington and to the plaintiffs as Arrington's heirs. The first-named defendant is referred to in this record as Alice Mattingly (her maiden name), as Alice

Bowling (one of her husbands was named Bowling), as Alice Erasmie, and as Alice Sizemore, and her given name underwent a change also and Alice became Aleene; but to avoid confusion we shall refer to her as the defendant Alice. In stating the facts we shall first state those asserted and relied on by Arrington's heirs and later the claims of the defendant Alice.

In 1912 Arrington was living in Rocky Mount, N. C. He was about 50 years old, was vice president of the National Bank of Rocky Mount, was a bachelor, and a man of considerable wealth. At that time the defendant Alice, then the wife of W. H. Bowling, a railroad engineer, came to town. She then had or soon thereafter acquired a very unsavory reputation. She became acquainted with Arrington and became his mistress.

After that relation had continued for about two years, Arrington seemed to have tired of it, and to rid himself of the defendant Alice, on December 12, 1914, bought this McDaniel farm and put her on it, and the farm was on that date conveyed by McDaniel to J. T. Taylor of Nashville, N. C. There is a deposition of C. W. Hoskins, an attorney of Hyden, Ky., in this record, by whom it was shown that at the suggestion of the defendant Alice he represented Arrington in the purchase of this farm and that it was at Arrington's suggestion and with the knowledge of the defendant Alice that this farm was conveyed to Taylor, and that he thereafter represented Arrington in the listing of this farm for taxation, the payment of the taxes thereon, sending the receipts to Arrington, etc., including the transfer of it from Taylor to Arrington, for all of which Arrington paid him. On January 6, 1915, this deed from McDaniel to Taylor was recorded in Leslie county.

On March 15, 1916, Jackson Begley sued J. T. Taylor and the defendant Alice to recover about three-fourths of an acre of this land which he claimed belonged to him.

The defendant Alice on May 1, 1916, filed a separate answer in that suit, in which, after controverting the petition, this appears:

"The defendant, Alice Bowling, further says that she does not hereby intend to defend herein for the defendant, J. T. Taylor; and that she has no authority to enter the appearance of the said defendant herein; and that she does not do so; but

she says that the defendant, J. T. Taylor, is the owner of the strip of land described in the petition of the plaintiff as claimed by the defendants, and held by them; and that she is the tenant of said strip under the said J. T. Taylor, at his will and sufferance, and that thus she holds and not otherwise.

"Wherefore she prays that the petition of the plaintiff as to her, be dismissed, without judgment prejudicial to her codefendant, and for all proper relief, including costs.

"Cleon Calvert,

"Attorney for the Defendant,

Alice Bowling."

By this same witness Hoskins it was shown that he, for Arrington, effected a settlement of this lawsuit with Jackson Begley and that Arrington sent him the money with which to buy the claim of Jackson Begley, which money he paid Jackson Begley some time between the 10th of April, 1917, and the 25th of October, 1917.

Jackson Begley testifies that after he brought this suit he had a conversation with the defendant Alice in which she told him she had employed Walter Hoskins and Cleon K. Calvert to represent her. C. W. Hoskins and Walter Hoskins are one and the same. The defendant Alice filed no exceptions to this, she did not deny these conversations when recalled as a witness, but testified she did not employ any one to file a separate answer for her and did not know one had been filed.

Cleon K. Calvert testified:

"She came to my office sometime about the first of May, 1916, with the summons in that case which had been served on her, she gave me this summons and asked me if I would represent her, in this suit in connection with Mr. C. W. Hoskins, who always handled the business of S. L. Arrington, in this office. She left this summons with me and I have just taken it out of the files of this office, and I file a copy of the summons which she brought to me as a part of this deposition. . . . Mr. Hoskins was absent from Hyden at the time plaintiff came to me and when he came back I told him about this employment, he said to me that he would represent Taylor when they got him before the Court and for me to represent the plaintiff, and under· her direc-

tions I filed the separate answer of Alice Bowling found in that record and it contains just exactly what she told me to put in it. She told me that the land belonged to Taylor and that she was Taylor's tenant, and I had no way to know any better because there were no deeds of record and I never handled the title nor had anything to do with this property for the Arringtons.''

The defendant Alice does not deny this. We will discuss this later and will now state some of the other occurrences.

On July 18, 1916, J. T. Taylor conveyed this land to Arrington. Arrington died February 12, 1918, and on March 22, 1918, this deed was recorded in Leslie county. On August 8, 1918, Arrington's heirs conveyed this land to W. G. Begley, and that deed was recorded in Leslie county May 8, 1919. In the meantime on September 10, 1918, the present defendant Alice had sued W. G. Begley to quiet her title to this property, the result of which can be seen in Begley v. Erasmie, 205 Ky. 240, 265 S. W. 833, 835; Id., 273 U. S. 655, 47 S. Ct. 342, 71 L. Ed. 825. In this opinion we said:

''The Arrington heirs may in good faith rescind and abandon the sale to Begley, and in their own names maintain an action to recover the land. Luen v. Wilson, 85 Ky. 503 [3 S. W. 911, 9 Ky. Law Rep. 83]. Their rights to do this are in no wise affected by the judgment in this case. We only determine now that the deed to Begley is void.''

On June 15, 1928, W. G. Begley and wife reconveyed this land to Arrington's heirs, and the litigation now before us was begun as stated at the beginning of this opinion.

Albert Sizemore and the defendant Alice filed an answer and counterclaim of five paragraphs. The first was a traverse. In the second the claim was made that Arrington's heirs had known of the suit against Begley and were thereby estopped to claim this land. By the third she attacked the deed reconveying this land to Arrington's heirs as champertous. By the fourth she pleaded the judgment appealed from in Begley v. Erasmie as a bar to this action, and paragraph 5 was a similar plea set out in different words.

What we have quoted above from our opinion in Begley v. Erasmie disposes of paragraphs 2, 3, 4, and 5, and the defendant Alice is upon the defensive to sustain her title, for Arrington's heirs show a paper title in themselves and must succeed unless it is overcome. She sought in two ways to do this: First, she claimed she bought this land herself, and that it was paid for out of her own money that she had saved up and which Arrington was keeping for her; second, that Arrington made her a deed to this property and sent it to her in the summer of 1916, which she, without having it recorded, returned to him to be placed in his safety deposit box for safekeeping. She wholly failed to sustain her first claim, the trial court found against her on that score, and she has apparently abandoned it. The trial court found for her on her second claim, and in the judgment before us it is recited:

"The court finds from the evidence and Exhibits as a matter of fact, that S. L. Arrington, in his life time made, executed, and delivered to the defendant, Alice Erasmie Sizemore, then Alice Bowling, a Deed of conveyance conveying to her in fee simple, the two tracts of land set up in plaintiff's petition herein and that said deed has been lost or misplaced."

To sustain this judgment the defendant Alice relies largely on her own testimony. She testifies twice. Her first deposition was taken on May 15, 1919, and in it she says that between July 20 and the 1st of August, 1916, Arrington made and delivered to her a deed conveying her this farm, that at the same time Arrington gave her the deed from McDaniel to Taylor and from Taylor to Arrington, and that later she sent all three of them back to Arrington to be placed in his safety deposit box and kept for her. We will have more to say of her evidence later.

Her sister Mollie Riley testified that in December, 1916, the defendant Alice came by her home in Grafton, W. Va., on her way back from Rocky Mount, N. C., and that while she was there she showed her some deeds, among which was a deed from Arrington to Alice Mattingly, both written and signed with a pen and in the handwriting of Arrington, and which she understood had been executed while she was in Rocky Mount. The witness said she did not read this paper through, but

read enough to know to whom it was given, and that it conveyed this land. She did not remember the date of it or the officer before whom it was acknowledged, but she thought it had been acknowledged.

Frank B. Riley, the husband of this witness, testified he was present on this occasion, and that he glanced at this deed over his wife's shoulder, and that he understood from their conversation it was a deed to this McDaniel farm, that he did not read very much of it, and could not say whether a consideration was recited in it or not.

The defendant Alice testified again on 8th of December, 1919, and in this deposition she claims this deed from Arrington to her was sent to her by registered mail from Nashville, N. C., in a wrapper addressed to "I. Mattingly, Dryhill, Leslie Co., Ky.," and bearing in the upper left-hand corner, "From J. T. Taylor, Nashville, N. C." This wrapper she says contained the deed of this McDaniel farm from Arrington to her, and also a letter. She files this letter. It is dated July 25, 1916, addressed to "Dear Alice," and signed "Y. B. F." This letter is rather long. In it we find this:

"You will find enclosed the deed you ask for. I failed to send it when I said I would. I was sure I had it put away at H. place. I went through the papers where I thought I had it and failed to find them. I was sure it was in my box in vault where I found it."

In her first deposition she filed a letter headed, "Rocky Mount, N. C., Oct. 9th, 1916, Dear A.," and signed, "Y. B. F." In this letter we find:

"You are the owner of a good little farm, taxes even paid, a horse given you, a cow given you etc., and then want money to buy horse feed in Sept. and Oct."

In her first deposition she files a letter headed, "Rocky Mount, N. C., Nov. 30th, 1914. My Dear Mr. Mattingly":

"I have from Alice, Mr. McDaniel's letter to you, dated Buckhorn, Ky., Nov. 19th, in which he agrees to accept $2000.00 for his farm and farm implements. . . . I think I will have First National Bank, Montgomery, Ala., to send you New

York exchange for the sum of $2000.00 and if the deal is consummated you can endorse it to McDaniel. Have the deed made to J. T. Taylor of Nash County, N. C., then have the deed recorded and mail to me, but first and most important of all have the records examined thoroughly and see that they are conveying a good fee simple title. After our money is gone if some one in the future should institute legal proceedings against us and win our land—we would feel pretty blank. I will ask you sir, to not mention my name in this connection. . . . I would regret for you to fail to buy this place for Alice wishes so much to live there.

"S. L. A."

The defendant Alice testifies that all of these letters as well, as the deed she claims he made her, are in the handwriting of Arrington, and that the letters "Y. F. B" stand for the words Your Best Friend and is the signature of Arrington. This is all of the evidence that is of any importance in this case. We will now discuss the admissibility of it and the objections thereto.

Arrington's heirs filed exceptions to thirty-eight of the questions asked the defendant Alice in her first deposition given May 15, 1919, and to her answers thereto. These exceptions were well taken and none of this evidence was admissible. Arrington was dead when this deposition was given, and the defendant Alice is not competent to testify for herself relative to the matters embraced in those questions and answers.

On August 27, 1919, the deposition of R. W. Arrington (one of the Arrington heirs) was taken, and for the defendant Alice it is contended that her competency as a witness was thereby waived. The applicable part of section 606 of the Code of Civil Practice is:

"No person shall testify for himself concerning any verbal statement of, or any transaction with, or any act done or omitted to be done by . . . one who is . . . dead when the testimony is offered to be given . . . unless . . . a representative of, or some one interested in, his estate, shall have testified against such person, with reference thereto."

This means just what it says: She was not a competent witness unless some of these Arrington heirs had

previously testified. We had exactly this question in Keene's Ex'x v. Newton, 192 Ky. 6, 232 S. W. 71, 72, and in disposing of it said:

> "Plaintiff's testimony was not relieved of its incompetency by the fact the personal representative later offered herself as a witness to deny his testimony, erroneously admitted over her objections and exceptions, since by the court's error she was forced to testify whether she desired to do so or not, or else permit plaintiff's incompetent evidence to go to the jury unchallenged. To so construe the provision would defeat its evident purpose and pervert its plain language."

Nor can it be said her evidence, relative to these being Arrington's signatures and these papers being in his handwriting, is not in conflict with the provisions of the Code, for in case of Keene's Ex'x v. Newton, supra, we quoted this from the case of Northrip's Adm'r v. Williams, 100 S. W. 1192, 30 Ky. Law Rep. 1279:

> "No person will be permitted to give testimony in his behalf against the estate of a deceased person that will have a tendency to strengthen or make good his claim, or that will leave the impression upon the court or jury that his demand must be just and reasonable, because in substance and effect this would be testifying, although indirectly, to transactions with and acts done or omitted to be done by the deceased."

Thus all of these exceptions should be sustained, and that takes out all of her first deposition that is material. The defendant Alice gave another deposition on December 8, 1919, and exceptions were filed to 10 of the questions and answers in it. These must also be sustained.

The mere fact that R. W. Arrington gave a deposition is not enough to make the defendant Alice a competent witness to testify thereafter, for a litigant may take a deposition and never file it, and in this case R. W. Arrington's deposition was not filed until January 14, 1920, hence the defendant Alice was not a competent witness when she gave her deposition on December 8, 1919.

Thus her testimony is out of the case, and that takes out all of the evidence that this alleged deed was sent by her to Arrington and takes out all of these alleged

letters of Arrington, including the one to Mattingly, for they are only identified by her testimony. She did not offer to testify after this deposition was filed. She lost nothing by not doing so, for R. W. Arrington had testified to nothing relative to the execution of this deed; his testimony was that he found Arrington's deeds and papers in a tin box in the vault of the National Bank of Rocky Mount, and that this alleged deed from Arrington to the defendant Alice was not among them. The rule is that when one interested in an estate testifies for it, the adverse party then becomes a competent witness, not for all purposes and on all subjects, but solely on those subjects and about those things concerning which the one interested in the estate has testified. See Richardson v. Isaacs (Ky.) 118 S. W. 1003.

Thus the defendant Alice has nothing to sustain her contention except that she is on the land, and the testimony of her sister Mrs. Riley and her husband, Frank Riley, and that of her father, I. Mattingly.

As witness after witness in this record testifies that the reputation of the defendant Alice and that of her sister Mollie Riley is bad, the weight of their evidence is thereby affected. Mrs. Riley says that when she saw the alleged deed from Arrington to the defendant Alice, she understood from her that she had been to Rocky Mount, N. C., and that while there Arrington had executed this deed and given it to her. If she had such an understanding, she got it from the defendant Alice, and that is quite at variance with the statement of Alice in her deposition that this alleged deed was sent to her by registered mail from Nashville, N. C., along with the letter of July 25, 1916. We are persuaded the deed referred to in that registered letter is the deed from McDaniel to Taylor which Cleon K. Calvert testifies he told the defendant Alice he would need in defense of the action of Jackson Begley v. Alice Bowling and J. T. Taylor, and which she told him she would have to send to Rocky Mount, N. C., for, and which he says she afterwards exhibited to him. Mrs. Riley's statement that this deed, which she says she saw, was in the handwriting of Arrington and that it was his signature thereto, when she had never in her life even seen the man, is not very impressive, and neither is her statement that this alleged deed conveyed the McDaniel land to the defendant Alice, especially when she says she did not read it through but only read a part of it. The evidence of her

husband, Frank Riley, amounts to nothing; he says he merely glanced at the deed, and what he knew, about what it conveyed, he learned from the conversation between his wife and her sister. He did not even notice whether it recited a consideration or not. The evidence of I. Mattingly does not help her in the least, for while he says he understood from Arrington the land was being bought for Alice, he does not say he understood it was to be or had been conveyed to her. So far as his testimony goes this land may have been bought for Alice to occupy as a tenant, and that is exactly the way she was occupying it in May, 1916, according to what she told Calvert and according to the answer he filed for her in the case of Jackson Begley v. her and Taylor. That answer is in part copied above. No objection to its introduction was made, and it is a full explanation of just how the defendant Alice was then occupying this property. Some objections were made to this evidence before the officer taking the depositions, but objections so made are unavailing. See Anglo-American M. Co. v. Phillips, 236 Ky. 245, 32 S. W. (2d) 994; Holliday v. Holliday, 238 Ky. 522, 38 S. W. (2d) 436; Day v. Grubbs, 235 Ky. 741, 32 S. W. (2d) 327, 72 A. L. R. 323; Prewitt v. Bull, 234 Ky. 18, 27 S. W. (2d) 399; Ford v. Ford's Ex'r, 233 Ky. 673, 26 S. W. (2d) 551; Harrel's Adm'r v. Harrel, 232 Ky. 469, 23 S. W. (2d) 922; Levy v. Doerhoefer's Ex'r, 188 Ky. 413, 222 S. W. 515, 11 A. L. R. 207; Roberson v. Roberson, 183 Ky. 45, 208 S. W. 19; Hancock v. Chapman, 170 Ky. 99, 185 S. W. 813.

The defendant Alice seems to have changed her position after Taylor conveyed this farm to Arrington and she began to claim adversely to the latter, and on the former appeal we found she was holding adversely to Arrington's heirs on August 8, 1918, when they conveyed it to Begley. For the defendant Alice it is argued that the will of Arrington shows he did not own this property, this being based on these words taken therefrom:

"This is all of my estate other than that disposed of in items one, two and three."

It is argued that this is an express acknowledgment by Arrington that he did not own this property. Standing alone, these words might appear to be such, but we must arrive at the meaning of these words by reading them with their context.

Arrington in items 1, 2, and 3 of his will devised certain property in Martin county, N. C., $1,800 in money, and his gold watch and chain, to certain parties, then comes this item:

"Fourth. I give to my niece Kate W. Arrington one half of all the residues of my estate and the remaining half to my brothers Thomas M. Arrington and Robert W. Arrington and my sister Laura Maud Arrington. That is all of my estate other than that disposed of in items one, two, and three is to be divided in two equal parts, one part to be given to my niece Kate W. Arrington and the other part to my brother Thomas M. Arrington and brother Robert W. Arrington, and my sister Laura Maud Arrington and last three to have equal shares."

When we read this item fourth as an entirety, it is evident the testator used these words for the purpose of explaining how he wanted the residue of his estate divided, and not for the purpose of showing that there was no residue, as contended by the defendant Alice. She has seized on this which is taken from the letter of Arrington to her father, I. Mattingly, dated November 30, 1914, and quoted above:

"Have the records examined thoroughly and see that they are conveying a good fee simple title. After our money is gone if someone in the future should institute legal proceedings against us and win our land—we would feel pretty blank."

She contends that by the use of the expressions "our money," "against us," "our land," and "we would feel," Arrington shows this land was bought for the defendant Alice. We do not think so. A similar contention was made in White v. White, 229 Ky. 666, 17 S. W. (2d) 733, 736, and of it we said:

"It seems the defendant wrote a letter or two in which he used the expression, 'our property,' but that has little effect on us, for be have known many fathers and heads of families, in referring to property absolutely and individually their own, to use such expressions as 'our house,' 'our farm,' 'our corn,' 'our cattle,' 'our hogs,' 'our automobile,' etc."

She has found something in one of her letters, that was filed as an exhibit in a deposition given against her which she thinks helpful. It is:

"It seems like my stepmother wants to find fault all the time here, first excuse was if the land was not deeded to me something mite happen and she would have to move."

Instead of that helping her, it shows that even then on December 2, 1914, while the purchase of this farm was being considered and ten days before it was consummated, she knew this land was not to be conveyed to her, that such was generally known in the family, and her stepmother was complaining of it, yet her father then had in his hands Arrington's $2,000, and ten days thereafter the purchase was consummated and the land conveyed to Taylor pursuant to Arrington's directions previously given.

She seizes on this which is contained in the deposition of R. R. Gay and relates to a conversation Gay had with Arrington shortly before he died:

"He had the deed transferred to him from Mr. Taylor so as to get it in his own possession, for some private reason of his own. . . . He spoke about this piece of land, saying he wanted to dispose of this land and did not know exactly what to do with it—did not know whether he ought to give anything more to her. . . . He could not decide then just what to do. . . . After a while, he sent for me again and this was the main subject he tried to talk about. . . . He wanted me to dispose of it and get it off of the family records, as he thought he was going to die."

She contends this shows Arrington had given her the farm and was debating the question of giving her more. We are unable to agree with her. This record shows gift after gift of Arrington to her, and this language, read in the light of this record, shows Arrington was considering the propriety of giving her something in addition to the money, etc., he had already given her. That he did not mean he had given her the land is shown by his asking Gay in this conversation to sell it for him.

That is the whole of the evidence. Now let us consider what she had to do in order to succeed. She had to prove

the execution of the alleged deed, its delivery, its loss or destruction, and its contents. 18 C. J., p. 411, sec. 488. From experience mankind has learned the wisdom of requiring certain contracts to be in writing. See section 470, Ky. Stats.

If one by claiming, as the defendant Alice does, that certain property was conveyed her by written deed and that she has returned the deed to the grantor to keep for her, can prevail upon anything less than the clearest and most convincing evidence, then the very thing the statute directly forbids she would thus accomplish by indirection.

In considering the evidence introduced upon this subject, we must not lose sight of the principles of law which govern in cases where it is sought to substitute, for a deed, parol evidence of its prior existence. The spirit of our law is that title to land shall pass only by deed or will, and where it is sought to set up title under a lost deed, the evidence of the execution of such deed, of the contents thereof, and of its delivery, must be clear and convincing, approaching in dignity the conclusiveness of a written instrument.

The opportunities for the perpetration of fraud in establishing titles by proof of lost instruments would be so great, unless the rule was thus strictly enforced, that uncertainty of land tenures would result, and the mischief thus produced would be very much greater than any injustice which may follow from the application of such a rigid rule. See Lucas v. Hensley, 81 W. Va. 239, 94 S. E. 138, L. R. A. 1918B, 875.

In Tayloe v. Riggs, 1 Pet. 591, 600, 7 L. Ed. 275, the United States Supreme Court lays down this rule:

"When a written contract is to be proved, not by itself but by parol testimony, no vague uncertain recollection concerning its stipulations ought to supply the place of the written instrument itself. The substance of the agreement ought to be proved satisfactorily; and if that cannot be done, the party is in the condition of every other suitor in Court, who makes a claim which he cannot support. When parties reduce their contract to writing, the obligations and rights of each are described, and limited by the instrument itself. The safety which is expected from them, would be much impaired, if they could be established upon uncertain and vague im-

pressions made by a conversation antecedent to the reduction of the agreement.''

Virginia states the rule this way:

" 'Where the issue involves the existence and contents of a written paper, the doctrine seems to be well founded in principle that, the greater the value of the instrument, the more conclusive should be the proof of its existence and contents. And where the instrument rises to the dignity and importance of a muniment of title every principle of public policy demands that the proof of its former existence, its loss, and its contents should be strong and conclusive, before the courts will establish a title by parol testimony to property which the law requires shall pass only by deed or will. . . . It is the policy of the law, adopted with a view to prevent frauds, that title to lands shall pass only by written instruments; and the difference is more in name than in fact between giving effect to a parol conveyance of lands and establishing a title to lands under an alleged lost deed upon parol testimony of its contents and loss, unless the proof be clear and conclusive.' Thomas v. Ribble (Va.) 24 S. E. 241.'' Carter v. Wood, 103 Va. 68, 48 S. E. 553, 554.

For the general rule, see 38 C. J., p. 259, sec. 24, and the annotation on this subject in L. R. A. 1918B, page 879. The defendant Alice would be in a much stronger position if she had some competent evidence showing the return of this alleged deed to Arrington. See 38 C. J., p. 260, note 34.

Such a question has been before this court but few times so far as we have found. We established a lost deed in Mullens v. McCoy, 170 Ky. 547, 186 S. W. 137; in Hounshell v. Hounshell, 232 Ky. 532, 23 S. W. (2d) 959; in Wilson et al. v. Hall, 150 Ky. 663, 150 S. W. 823; in Fearn v. Taylor, 7 Ky. (4 Bibb) 363; in Martin v. Ray et al., 3 Ky. Opin. 336; in L. & N. R. Co. v. Letcher County C. & I. Co., 195 Ky. 297, 243 S. W. 45; in Hall v. Hall, 192 Ky. 664, 234 S. W. 282; in Hogg v. Combs, 93 S. W. 670, 29 Ky. Law Rep. 559; in Combs v. Noble, 58 S. W. 707, 22 Ky. Law Rep. 736; and in McCauley v. Galloway, 43 S. W. 225, 19 Ky. Law Rep. 1291.

We have refused to establish such in Calvert's Heirs v. Nichols' Heirs, 47 Ky. (8 B. Mon.) 264; Cooley v.

Cooley (Ky.), 1 S. W. 491; and Wilson et al. v. Hall, 101 S. W. 889, 31 Ky. Law Rep. 119. A reading of these cases will show the defendant Alice has failed to produce that quantity and quality of evidence produced by the litigants whose deeds were established.

It is contended here for the defendant Alice that she was entitled to a judgment on the pleadings, but in making this contention she has evidently overlooked the amended petition filed by Arrington's heirs on August 20, 1930, and appearing at page 83 of the transcript.

The defendant Alice has attacked the deed from Begley to Arrington's heirs as champertous. She need not have done that, as champerty does not have to be pleaded. We have searched the record to see if champerty at any place appears. The deed from Taylor to Arrington made July 18, 1916, was not so, for her claim of adverse possession had not then appeared and her claim or right to this property is based on the alleged deed of Arrington to her. So necessarily her claim is made under Arrington and began subsequent to that deed. The deed of Begley to Arrington's heirs of date June 15, 1918, was not champertous, for it conveyed nothing. It merely undid what the deed of August 8, 1918, had done, which was nothing, for we held in Begley v. Erasmie, supra, that deed was void.

She contends there is an entire failure of evidence to show that Arrington's heirs have rescinded the deed they made Begley on August 8, 1918, but the deed from Begley re-conveying the property to Arrington's heirs is sufficient answer to that.

On March 22, 1929, the defendant Alice filed a written motion for an order requiring the plaintiffs and their attorneys to show what authority they had to bring or prosecute this action.

Without waiting for the court to act upon this motion, Arrington's heirs and their attorney ten days thereafter filed response thereto. Again the court took no action. On August 30, 1929, attorneys representing the defendants then (also representing them now) signed with the attorney who represented Arrington's heirs then and now a stipulation, then filed by an order of court, relating to the preparation and practice of this case. By that, the question of authority to bring and maintain this suit was waived.

The trial court found for her; and she now contends that finding must be treated as the verdict of a properly instructed jury. That would be true if this were an action at law, but this action is in equity and the court expressly says so in its judgment. Nor can it be contended for her the finding of the judge should be treated by this court as a finding in a common-law action, because in the judgment it is recited:

"The trial by Jury, having been specifically waived and being now submitted, to the Court, upon the whole case for opinion and final judgment, and the Court advised from the pleadings, exhibits, and proof herein," etc.

That did not amount to a transfer of the action to the common-law docket, but if the court had actually and formally transferred the action to the common-law docket the result would have been the same. The Arrington heirs are seeking to have the defendant Alice enjoined from trespassing upon this land, cutting timber thereon, removing same therefrom, etc., and she on her part is seeking to assert title thereto in herself and to establish a deed to her therefor. Those issues are equitable. An action at law cannot be maintained on a lost deed. See Helm v. Eastland, 5 Ky. (2 Bibb) 193. It follows that a defense based on a lost deed is an equitable defense, and an issue relative to a lost deed is an equitable issue, so the finding of the trial court in this case would still be the finding of a chancellor even if he had formally transferred this action to the ordinary docket, which he did not, for where an action is an equitable action in everything except in name it must be treated here as if brought in equity. See Wood's Guardian v. Inter-Southern Life Insurance Co., 224 Ky. 579, 6 S. W. (2d) 712.

In an equity case this court enters such a judgment as the record justifies. Hodges v. Murray, 240 Ky. 127, 41 S. W. (2d) 923.

On every appeal there is a presumption that the action of the trial court is correct. The appellant must point out errors in the record to overcome that. In the case of the finding of a chancellor, if the appellant points out such error, we reverse the judgment. If he does not, we affirm it. If on the showing made this court is left

in doubt, then the presumption of correctness has not been overcome and the finding of the chancellor is not disturbed. That is the reasoning underlying the oft-used expression: *When this court is in doubt after examining the record, the finding of the chancellor will not be disturbed.* See Ford v. Ford, 233 Ky. 673, 26 S. W. (2d) 551, and Addison v. Wilson, 238 Ky. 143, 37 S. W. (2d) 7.

In this case we are left in no doubt whatever. From a reading of this record, there comes an abiding conviction that during those years in which they wallowed in their wanton lust, and afterwards, Arrington led the defendant Alice to believe he was going to give her this farm, yet just as strong a conviction comes that he never intended to do so and that he never did do so. There are in this record several letters purporting to be from Arrington to the defendant Alice, but not one of them has his name signed to it. There are perhaps twenty letters from the defendant Alice to him, which he kept numbered, and on all of them but two or three there is a memorandum written and signed "S. L. A." in which he notes briefly the contents, notes his name has not been mentioned, etc. No one can read this record without being struck by the man's vulpine watchfulness. He never allowed her to jockey him into a position where she would have an enforceable claim against him for anything. It is ordered that the relief prayed for by Arrington's heirs be given them and the counterclaim of the defendants be denied.

Judgment reversed.