**AMERICAN NATIONAL BANK AND TRUST COMPANY, Adm'r., Etc., et al., Appellants,**

v.

**Garnett GRIMES, Appellee.**

Court of Appeals of Kentucky.

Nov. 20, 1970.

**12**

G. D. Milliken, Jr., Milliken & Milliken, Henry J. Potter, Jr., Bowling Green, for appellants.

E. R. Gregory, Bowling Green, for appellee.

REED, Judge.

The circuit court adjudged that the plaintiff, Garnett Grimes, is the owner of an undivided one-half interest in a gas well located on the farm adjacent to his and from which he receives the gas used in his home. The defendants who are his brothers and sisters and their children appeal from that decision. The controversy contains strong overtones of long standing family jealousy; spite and punishment are apparently the objects desired more than a reasonable resolution of legal rights. We affirm the circuit court's judgment.

The plaintiff, Garnett Grimes, his father, Fred Grimes, and his mother, Allie Grimes, jointly purchased the original 136-acre tract of land. In 1947, they divided this tract into two farms. Fred and Allie Grimes received a 70-acre parcel, and plaintiff received the adjacent parcel of 66 acres. On

the 70-acre parcel, an unproductive oil well had been dug, gas had been found and the well had been capped. Plaintiff· and his father unplugged the well, purchased the casing from the company which had explored for oil, capped the gas and piped it to their respective homes. They jointly paid the expense attendant to the project. The gas well was about an equal distance from both houses. The well and the pipes, which were above ground, were open and obvious and were used by both plaintiff and his parents.

It appears that when the original tract was divided into the two farms in 1947, Fred and Allie Grimes executed and delivered to their son, Garnett Grimes, a promissory note in the amount of $1,000 which represented the agreed difference in valuation of the property divided.

In May 1965 Fred and Allie Grimes were aware of jealousy and bickering between Garnett and his brothers and sisters. Fred Grimes and his wife instructed Joe Garmon, a practicing attorney in Bowling Green, to prepare a written assignment of an undivided one-half interest in the gas well from them to Garnett Grimes. Mr. Garmon testified that he prepared this document and that it was executed and acknowledged by Fred and Allie Grimes. This assignment, according to Evelyn Vaughn who was Mr. Garmon's secretary, was typed in duplicate. The executed original was delivered to Garnett Grimes and the unexecuted office copy was retained in Mr. Garmon's files. Garnett Grimes delivered their $1,000 note back to his parents. The assignment did not state a source of title and when Garnett Grimes attempted to have it recorded in the county clerk's office, the clerk refused the document for record. Garnett Grimes then returned the original to Mr. Garmon's office where Evelyn Vaughn received it and gave Garnett Grimes a written receipt for it. She stated that she put the original in Mr. Garmon's safe.

Fred Grimes died in May 1966. Garnett Grimes continued to use the gas. Finally,

in August 1967, Allie Grimes died. After her death, her personal representative brought an action in the circuit court for the sale of the 70-acre parcel of land on which she had resided because the personalty was insufficient to pay the debts of her estate. Garnett Grimes and his brothers and sisters were named defendants in this suit. Mr. Garmon filed a pleading on behalf of Garnett Grimes, but the record does not disclose its contents. Mr. Garmon also notified the personal representative and all of the brothers and sisters that Garnett Grimes claimed an undivided one-half interest in the gas well. He also informed them that the original of the assignment had been lost, but that a copy of it existed and was in his files.

The master commissioner conducted a public sale of the 70-acre parcel and the successful bidders were Elizabeth Floyd, a sister of Garnett Grimes, and her husband. They assigned their bid to their two sons, Harold Floyd and Ronald Floyd, to whom the commissioner's deed was made. As soon as the deed was delivered, an attempt was made to cut the gas line and prevent Garnett Grimes from further use of the gas.

Garnett Grimes then filed the instant action to establish his right to use the gas; his mother's personal representative, his brothers and sisters and his nephews who received the commissioner's deed were named defendants. This action resulted in the ultimate entry of the judgment from which this appeal is prosecuted.

The defendants assert that the finding of fact of the trial judge concerning the validity of the lost assignment is clearly erroneous. They argue that the plaintiff is estopped from claiming an interest in the gas well because he did not prove that he did not object to the sale of the land in the estate settlement action or claim any interest in the gas well in that suit. They also argue that the unrecorded assignment was not effective against purchasers at the commissioner's sale. Finally, they insist that the language of the alleged copy of the assignment is not sufficient within itself to convey an interest in real estate because the description of the subject of the assignment is not sufficiently definite.

We will not extend this opinion by a ponderous discussion of the various technical rules of law on which the defendants say they rely. If we did so, we would arrive at the same result and nothing would be achieved but a display of verbosity. The fundamental difficulty with defendants' position is that they seek to apply rules in a context different from that to which they apply.

We are not dealing with innocent purchasers for value without notice. The record is abundantly clear that all concerned knew perfectly well that plaintiff needed and used the gas and claimed a right to do so. Thus the complaints directed to what his pleading in the estate settlement action said or did not say and the arguments concerning the necessity of recording the assignment are irrelevant to the disposition of the case.

The evidence establishing the lost assignment is very persuasive. It came from disinterested witnesses. It is confirmed by the extrinsic circumstances. Here, we have no claim of ownership per se. Rather, we have a claim of right to use a commodity which is in the circumstances a necessity. There is strong evidence of payment for the right. The use was open, known, and continuous. The conditions were obvious to any reasonable inspection. The context is entirely different from that presented in most lost instrument cases. We are satisfied that the evidence in this case when considered in the light of the proved extrinsic circumstances met the test expressed as "clear and convincing" or, to say the same thing, the evidence demonstrated a higher degree of probative value than ordinarily required to support a finding of fact. Cf. Arrington v. Sizemore, 241 Ky. 171, 43 S.W.2d 699 (1931).

The assignment said: "convey unto the party of the second part one-half (½) undivided interest in the gas well now in operation on the farm of the parties of the first part." The proof established that the 70-acre parcel was the only farm the grantors owned. The gas well was certainly obvious and even the pipes were above ground. Therefore, these facts coupled with the undisputed knowledge of the defendants presents no picture of uncertainty. The plaintiff's claim is really more in the nature of a right to an easement than it is in the nature of a claim of title to land. If the location of an easement is insufficiently described in the written instrument that evidences an easement already in existence, yet if the location can be ascertained from evidence extrinsic to the written instrument such as by observation of the obvious location and extent of the easement, the insufficient written description will not prevent enforcement of the easement. See Dotson v. Kentland Coal & Coke Co., Ky., 265 S.W.2d 466 (1954).

We hold that the findings of fact of the trial judge are binding. CR 52. We find no error of law.

The judgment is affirmed.

All concur.