LILLY MAY GRANT'S GDN., ET AL. *v.* JOHN L. GRANT.

[Abstract Kentucky Law Reporter, Vol. 4—892.]

**Resulting Trusts.**
> In order to make a case within the law of resulting trusts it is important that the consent of the party paying the consideration be not given, and where one furnishes some of the money for erecting a house on his son's real estate, knowing that the title is held by the son's wife, he has no lien or resulting trust, as his claim must be treated as any other debt against his son's estate. ·

APPEAL FROM MASON CIRCUIT COURT.

April 21, 1883.

OPINION BY JUDGE HARGIS:

The appellee, John L. Grant, brought this action for the purpose of declaring that his grandchild, the appellant, Lilly May Grant, held in trust for him a certain house and lot, the legal title to which was in her mother, Kate Grant, deceased, from whom she had inherited it, and to compel her to convey to him the title, on the ground that he had furnished the consideration paid for the house and lot.

It is shown, by the record, that Addison Grant, the son of appellee, and father of appellant, Lilly May Grant, was intermarried with Kate Miller, March 4, 1867, and of this union Lilly May was born in 1869; that her mother and grandmother Miller bought and paid $100 for the lot which was conveyed to Kate, December 22, 1870, he paying $42 and her mother $8 of the consideration for her; that the lot was partitioned and a deed made between Kate and her mother in March, 1875; that Kate died March 6, 1878, and Addison, her husband, January 20, 1879. This suit was brought in October, 1879. The house was built in 1871 or 1872.

The appellee was engaged in butchering and had his son, Addi-

son, hired at $8 and meat for his family per week during the time the house was being erected and for several years afterwards. The house cost some $600 or $700 and was paid for by Addison Grant, who it is specifically proved used meat accounts and money in payment for work and materials to the extent of near $150 which belonged to the appellee. It is contended by the latter that, as Addison had no means except his weekly wages, he must have used the appellee's money and meat accounts to pay the whole cost of the house. To presume so would reverse the presumption of innocence which the law induges, and dispense with proof where it is most important to require it. Especially is such proof required when it is shown that Addison, by frugality and economy, might have saved enough of his wages to have paid for the erection of the house.

In order to make a case within the law of resulting trusts it is important that the consent of the party paying the consideration be not given. Here it appears that the appellee consented to a beef account to pay for some of the carpenter work, and furnished a portion of the brick, and on one occasion the appellee spoke of assistance he had rendered his son. Besides this he had at the time the accounts were used constructive notice, and, as it is not denied but virtually conceded, also actual notice that the legal title to the lot on which the house was erected was in Kate Grant, who paid for it with her own money, as proved by her mother and the recitals of the deed itself. Under this state of fact and appellee's long acquiescence, there is neither lien nor resulting trust.

The appellee's claim must be treated as any other debt against his son's estate. Had he, however, sought the sequestration of the house and lot until his claim was satisfied, and proved the fraudulent use of his beef accounts or money in the building of the house on the wife's land with her expressed or presumed consent, the court might have decreed the rents until the actually proved appropriations were restored; but as he only prays to have an alleged trust, which is not shown, to be declared and the title to the house and lot conveyed to him, the judgment of the circuit court decreeing the conveyance must be *reversed* and cause remanded with directions to dismiss the appellee's petition.

*Wm. Lindsay, T. C. Campbell, for appellants.*