CASE 3—APPEAL TO CIRCUIT COURT—FEBRUARY 4.

## Commonwealth for Greenup County v. Chesapeake and Ohio Railway Company.

APPEAL FROM GREENUP CIRCUIT COURT.

1. RESULTING TRUSTS.— Where a deed to land is made to one person, and the consideration paid by another, no trust results in favor of the person paying the consideration, the law as to resulting trusts having been changed by statute in this State.

2. SAME—STATUTE OF FRAUDS.—Even under the equitable rule as to resulting trusts, a verbal agreement by the holder of the legal title to land that another shall be interested in the title, or an agreement to buy land from a stranger for the benefit of another without that other paying the consideration, comes directly within the statute of frauds, and does not create an enforceable trust. Besides, in this case the evidence fails to establish the alleged agreement by the holder of the legal title to buy the land for the benefit of another.

3. EXEMPTION FROM TAXATION.—A railroad company having agreed, as a part of the consideration for the use of land leased by it for a thousand years, to pay the taxes on the land, a statute exempting its property from taxation for five years from the completion of its road does not exempt it from the payment of taxes on the leased property during that time. But the lessor may be compelled to list the property for taxation unless the lessee gives it in.

BEN. E. ROE FOR APPELLANTS.

1. It was not error in the county court to order the land listed in the name of Woodruff and Julia W. Anderson, although the legal title

Commonwealth for Greenup County v. Chesapeake and Ohio R'y Co.

was not in them at the date of which the assessment was made, as the State and county had a lien for the taxes which could not be defeated. Besides, the possessionary control of Woodruff and Julia W. Anderson would have been sufficient to authorize the assessment of the property in their names. (Gen. Stats., chap. 92, art. 1, secs. 2, 6, 7; *Idem*, art. 6, secs. 15, 16, 22, 25; Commonwealth v. Gaines & Co., 80 Ky., 489.)

2. If the railroad company is the equitable owner of the land as claimed, it is equally as liable for the tax. The act of April, 1884, exempting railroads from taxation is unconstitutional, because it destroys that uniformity and equality of taxation which our organic law requires.

W. H. WADSWORTH & SON, B. F. BENNETT FOR APPELLEE.

The property sought to be subjected to taxation by this proceeding is railroad property, the railroad company being the equitable owner, and the statute has provided a different method from this proceeding for the assessment for taxation and the collection of taxes on such property. (Gen. Stats., chap. 92, art. 3.)

COCHRAN & SON AND WADSWORTH & SON IN PETITION FOR REHEARING.

The proceeding should have been against C. H. Coster, and against him alone, he alone being the owner of the property on September 15, 1889, and under an obligation at that time to list it for taxation for the year 1890, and for this reason, if for no other, the lower court was right in dismissing the action. The proceedings authorized by the statute are criminal in their nature, and for that reason must be against the person who owned the property at the time it should have been listed. (Gen. Stats., chap. 92, art. 6, secs. 15, 16, 17, 22, 25; *Idem*, art. 1, sec. 6; Evans v. Commonwealth, 13 Bush, 269; Lincoln County Court v. L. & N. R. Co., 3 Ky. Law Rep., 436; L. & N. R. Co. v. Commonwealth, 85 Ky., 198.)

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

The sheriff of Greenup county reported to the Greenup county court that J. C. Woodruff and Julia W. Anderson owned a certain tract of land lying in said county, which they had leased to the Chesapeake and Ohio Railroad Company, and which property had not been "assessed for taxes due for 1890." The said parties were summoned to appear, &c. Thereafter, J. C. Woodruff and Julia W. Anderson were

18      KENTUCKY REPORTS.     [VOL. 94.

Commonwealth for Greenup County v. Chesapeake and Ohio R'y Co.

proceeded against as non-residents of the State, and the Chesapeake and Ohio Railroad Company and the Maysville and Big Sandy Railroad Company entered their appearance, the latter named road claiming to be the lessee of the former. A trial of the case resulted in a judgment ordering the clerk of the court to assess the property in the name of Woodruff and Anderson, except a small portion that the Chesapeake and Ohio Railroad was entitled to, and which was not assessed, presumably upon the ground that the same was exempt by statute for the period of five years, which time had not expired. The railroads appealed to the circuit court, and that court reversed the judgment of the county court and dismissed the action, upon the presumable ground that the legal title to the whole tract of land was in Woodruff and Anderson, as trustees of the Chesapeake and Ohio Railroad Company, and as said company held the equitable title and possession, the property was exempt from taxation under said statute.

The record facts as to the purchase, ownership and lease of said property are as follows: That C. H. Coster, of New York, purchased the land from A. A. Meade at the price of thirty-two thousand dollars, paying his own money therefor. He then leased the property to the Chesapeake and Ohio Railroad Company for the term of one thousand years, for an annual rental of sixteen hundred and fifty dollars, to be paid in monthly installments, and that said company was to pay all taxes and charges on the land that might come against it, in addition to the yearly rental. That Woodruff and Mrs. Anderson finally

acquir.d this property by purchase, paying their own money for it, and they leased the property to the Chesapeake and Ohio for the same time and on the same terms indicated above, and that the Chesapeake and Ohio Railroad Company then leased the same property to the Maysville and Big Sandy Railroad Company for one hundred years, at a rental of sixteen hundred and fifty dollars per year and the payment of the taxes.   There is no expression indicating a trust in any of said conveyances.   But the appellees, the railroad companies, attempt to establish a trust by the following verbal agreement: That the Chesapeake and Ohio Railroad Company, wishing to purchase said property for the purposes of its road, and not having the money with which to pay for it, applied to C. H. Coster to loan it the money and take a mortgage on the land to secure the payment, which he agreed to do; but in order to avoid circuity and complication, he was to pay for the land with his own money and take an absolute deed to himself, and then lease the land to said company for the term of one thousand years at an annual rental of sixteen hundred and fifty dollars, an amount equivalent to interest at the rate of five per cent. per annum, and the payment of all taxes and charges in addition. That the subsequent conveyances were made with the same understanding and agreement.   It is claimed that this verbal agreement as to the loan of said money and the deed, absolute on its face, should be held to be only a mortgage to secure the same, and created an enforceable trust, and which gave the appellees the equitable title to said land.

There is an equitable principle prevailing in many States, and which used to exist in this State, that in the sale of land, if the deed was made to one person, and the consideration was paid by another, the holder of the legal title would hold it in trust for the person paying the consideration, upon the "principle that the right of property should result to the source of the consideration." But by section 19, article 1, chapter 63, General Statutes, it is declared that such transaction vests no trust in favor of the person paying the consideration. But leaving the statute out of view, and admitting that the equitable rule is in force in this State, it is clear that the facts of this case do not come within the rule; for it is clear that the appellee paid no part of the consideration, but Coster and the subsequent vendees paid the respective considerations with their own money; and it is well settled that in such case no enforceable trust can result, for, as said, the foundation of a resulting trust of this nature is the payment of the consideration by a person other than the person to whom the deed is made. A verbal agreement by the holder of the legal title that another shall be interested in the title, or he buys the land from a stranger for the benefit of another, without that other paying the consideration, comes directly within the statute of frauds, and creates no enforceable trust. (See notes to Dyer v. Dyer, 1 vol.; White & Tudor's Leading Cases in Equity, pages 336-7.) Besides, it seems that, under the circumstances, the evidence of the witness that is relied on to establish this trust is not sufficient for that purpose; for the written leases all fix the term of lease at one thousand years, except

that to the Maysville and Big Sandy, at an annual rental of one thousand six hundred and fifty dollars, which sum does not pay exceeding five per cent. interest per annum. Now the question arises, when and how would the lessors get their principal at the end of the thousand years? How would the fact be established?

The truth, from the evidence, seems to be that Coster purchased the land at the suggestion of the Chesapeake and Ohio Railroad Company as an investment, relying upon said railroad company to lease it at a rental that would pay a reasonable interest, and the payment of the taxes and other charges in addition. The lessors are bound to pay the taxes on the land from the dates of their respective purchases, and the Chesapeake and Ohio Railroad Company agreed to pay the taxes and other charges upon the land as a part of the rental consideration; and to allow it to escape the payment of the taxes for the period of its five years' exemption would, in effect, allow it to violate one of its terms of lease, and put the burden of the taxes for said period upon the lessors without remedy, which that company, by the terms of the lease, can not do; for its obligation to pay the taxes is contractual, and commences from the date of the lease, in order that the lessors may have the full benefit of the contract. It seems that the entire property should be assessed by Woodruff and Anderson for the year 1890, and continuously thereafter, unless it is given in by said company without reference to its exemption, in which case Woodruff and Anderson may not be required to give it in for taxes.

The judgment is reversed, with directions for further proceedings consistent with this opinion.