## McFarland v. McFarland et al.

(Decided March 24, 1936.)

POPE & UPTON for appellant.

J. B. JOHNSON for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON— Reversing.

This case is unusual in its pleadings and the judgment rendered.

The petition states the relation between Ollie McFarland, Fannie McFarland, and Robert McFarland; the first was his mother, the second his wife, and the third, his son; and that he married in 1932 and died in 1934; that in March, 1934, he bought of Martha Davis and Louis Davis a small tract of land situated in the city limits of Williamsburg, Whitley county, at the price of $300; $150 in cash; a note for $75 payable in one year and another note for the same amount payable two years after date; the Davises executed and delivered a deed conveying the land to Ollie McFarland, his mother, and that he accepted the deed, took possession of the land, Ollie McFarland paying no part of the consideration; that "there was no intention or pur-

pose of George McFarland to actually vest any right, title or interest in the property in Ollie McFarland''; the deed was made to her for the reason that "a long time prior thereto," George "engaged in the illegal sale, possession and transportation of intoxicating liquors," and the deed to her was an attempt on his part "to prevent a forfeiture of the property to the commonwealth in the event 'of his arrest and conviction on a charge of possessing, or selling intoxicating liquors, and was, therefore, a fraudulent, unlawful and unauthorized attempt to defeat the law and was and is void, unlawful and of no effect, and that in good conscience and fairness to the surviving widow and their infant child they should not be penalized for or have taken from them their home by reason of his illegal occupation." The petition asks that Ollie McFarland "be adjudged to be without right to the land and the deed be canceled."

In an amendment to the petition it is charged that the possession of the deed was surreptitiously obtained by Ollie McFarland and later recorded in the county court clerk's office, and it is "a fraud on the party benefited thereby, and Ollie McFarland is benefited thereby if the same is permitted to stand."

A demurrer to the petition as amended was filed, but without waiting for the court's ruling thereon, Ollie McFarland filed an answer traversing the petition and affirmatively alleged that she had delivered to George McFarland the money with which to pay for the land, and that after the deed was acquired, she and her family moved on the property and occupied the residence thereon with George McFarland and his wife. She asserted ownership to the property under the Davis deed.

Subsequent pleadings were filed, making an issue. On the evidence introduced by the parties, the court by its decree "set aside and held for naught" the Davis deed to Ollie McFarland, and directed the clerk of the court to enter on the margin thereof in the county clerk's office this statement:

"The within deed was canceled by judgment of the Whitley circuit court entered in Order Book No. 59, at Page 345, the same"

to be attested by the clerk of the county court "by writing his name and official position." The decree declared title thereto was in George McFarland's children, subject to the widow's right to a homestead.

It will be observed that the effect of this judgment was to divest Ollie McFarland of the title to the land and necessarily re-invest it in Mrs. Davis, though the decree attempts to vest it in George McFarland. The theory upon which the court acted in its effort to do so is not disclosed by the record, nor the briefs of the parties.

Much evidence was directed to the question, who furnished the money with which to pay the Davises the consideration? It is unnecessary, as we view the case, to consider and determine whether Ollie McFarland or George McFarland furnished it.

It is very earnestly argued that there was no acceptance by Ollie McFarland of the Davis deed. It is admitted that George McFarland accepted it, and delivered to the Davises the $150 and the two $75 notes signed by himself as a consideration. Without determining that an acceptance of the deed by Ollie McFarland was required to impart validity to it as to her, its acceptance by George constituted a completed deed. If an acceptance by Ollie McFarland was essential to its validity, Charles McFarland, a brother of George McFarland, deposed that he was present when George delivered the deed to her after it was signed and acknowledged by the Davises, when she directed him where to put it and what to do with it. Charles' testimony in reference thereto is uncontradicted.

If the uncontradicted testimony in behalf of Ollie McFarland, excluding her own, which is incompetent under subsection 2, clause c, section 606, Civil Code of Practice, is accepted, George was acting for and in her behalf and paid $150 of her money as a part payment of the consideration for the land and accepted the deed for her. But as we view the case, to determine properly the rights of the parties, it is immaterial whether she paid any part of the consideration or whether George acted in her behalf at the time he accepted the Davis deed. Also, it is not essential to consider whether George had the deed made to his mother with a fraudulent intent.

Section 2353, Kentucky Statutes, controls the rights of Ollie McFarland and the widow and child of George McFarland. It reads:

"When a deed shall be made to one person, and the consideration shall be paid by another, no use or trust shall result in favor of the latter, but this shall not extend to any case in which the grantee shall have taken a deed in his own name without the consent of the person paying the consideration, or where the grantee, in violation of some trust, shall have purchased the lands deeded with the effects of another person."

Prior to the adoption of this statute, at common law, when a deed was made conveying land to one and the consideration was paid by another, a trust resulted in favor of the latter. E. Martin v. W. Martin, etc., 5 Bush, 47; Bryant v. Hunter, etc., 6 Bush, 75. The common-law rule has been changed by this statute. Commonwealth for Greenup County v. Chesapeake & O. Ry. Co., 94 Ky. 16, 21 S. W. 342, 14 Ky. Law Rep. 681.

At common law a trust resulted from the naked fact that one furnished the consideration and the title was taken to another, a stranger, without an agreement of a use or trust. Thereunder a trust resulted from the fact the consideration was paid by one and the deed was taken to another without an agreement to that effect. Since the statutes, supra, the rule is, where one furnishes a valuable consideration to buy land, and at the same time enters into a parol agreement to hold the title in trust for the one furnishing the consideration, such is valid and not within the statute. We cited and construed this statute in Roche v. Roche, 188 Ky. 327, 222 S. W. 86. Under it, no resulting trust arises unless the person furnishing the money did not consent for the person in whose name the deed was made to take the title in his own name. Cooksey et al. v. Tolliver et al., 208 Ky. 160, 270 S. W. 719. We have repeatedly ruled that no use or trust results in favor of one who pays the consideration for land, and, with his consent, the title is taken in another; such deed is valid against the person paying the consideration, and so consenting for the land to be thereby conveyed to another. Brafford, etc., v. Brafford, etc.. 4 Ky. Law Rep. 351; Mannen, etc., v. Bradberry, 81 Ky.

153; Grant's Guardian v. Grant, 4 Ky. Law Rep. 892; Smith v. Morgan, 4 Ky. Law Rep. 829; Preston v. Preston's Adm'x, 245 Ky. 552, 53 S. W. (2d) 957. See cases, supra, and Smith v. Smith (Ky.) 121 S. W. 1002.

The judgment herein is inconsistent with these principles. It is reversed for proceedings consistent herewith.