## Howser et al. v. Johnson.

April 18, 1944.

214

Kinsolving & Reasor for appellants.

Thad Cheatham and Amos Williams for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

This appeal is from a judgment holding that J. C. Johnson, plaintiff below, is the owner of a one-half undivided interest in a tract of land lying in Shelby and Spencer counties. The appellants, Mr. and Mrs. Charles Howser, were directed to execute a deed for a one-half interest in the tract to Johnson, and, upon their failure to do so, the master commissioner was directed to execute the deed. The Howsers are vigorously contending this judgment was in error.

Johnson, a widower about 78 years of age, and without children, owned and lived on a farm in Shelby County prior to the time this action was instituted in the fall of 1942. For about five years the Howsers rented the Johnson farm for $500 a year. Johnson made his home with them and allowed them a credit of $120 on the rental for his care. Early in 1941 discussions were held between Howser and Johnson relative to the purchase of a farm by the former. The parties looked at several farms, and finally an arrangement was made to purchase one for $5,000. Johnson borrowed $2,500 on his home place and made the first payment on the farm. Howser executed five notes for the balance of the purchase price. The deed was made to Howser only. Some 14 months after the execution of the deed Johnson sold his place and went to live with other parties. Shortly thereafter this action was instituted. The

Howsers defended on the ground that Johnson, because of the kind treatment received by him from them, had said he wanted to see them own a farm before he died, and had agreed to make the first payment ($2,500) on it.

It is necessary that we review briefly the evidence surrounding the execution of the deed to Howser. Louis Hume, an attorney of Spencer County, had been employed to look up the title of Johnson's farm. He came to Shelbyville for that purpose. While there he was employed to prepare the deed in question. He said Howser told him to make him the sole grantee; and, while he was in the county attorney's office preparing the deed, Johnson and Howser came in and asked him if he was about through, he replied he was and Johnson asked him how it was made and he said, "To Charlie Howser," and Johnson responded, "That is all right." Howser's testimony was to the same effect. Hume, Howser and two or three other parties testified that both the deed and the mortgage were read aloud in the presence of Johnson in the clerk's office and that no comment was made about the grantee. Johnson denied talking with Hume in the county attorney's office and said, because he was hard of hearing he did not hear the deed read in the clerk's office. There was proof, of course, that Johnson could hear as well as anyone his age. He admits, however, that, while he and Howser were standing in front of the court house at Shelbyville after the deed had been recorded, he asked the latter how it was made out and he told him it was in his name only. When asked why he did not do something about the matter then, if he was not satisfied, he said he had already paid his money and it was too late to do anything. Mrs. Howser testified she did not know anything about the purchase of the farm until the night after the deed was executed, at which time Johnson said: "Mrs. Howser, now if I die before morning," says, "my damn kinfolks won't get that much I have give Charlie his'n." Howser said he was not able to purchase the farm and it was only through Johnson's activities that the purchase was made. Johnson testified that at no time did he intend to make a gift to the Howsers of $2,500, but rather it was his understanding he and Howser were purchasing the farm under a partnership arrangement. Howser admitted that, after the difficulty arose, he told Louis Hume, who was representing Johnson, he would not execute Johnson a deed to a one-half interest in the

farm, but he would give him a mortgage if he would spread the payments over 10 years. He said he finally refused to do this, however, because he felt like the farm was his, because Johnson wanted to help him buy a place, and "I bought a place, it was made in my name and I feel like it is my place."

The primary effect of the chancellor's ruling was that there was no gift of $2,500 on the part of Johnson to the Howsers. We concur in that view. There was no blood relationship between the parties, and, while there is every indication the Howsers furnished Johnson with a good home for the five years they lived on his place, he paid them for his care. It hardly stands to reason that a man 78 years of age, with no close relatives, would place a $2,500 mortgage on his home place to help strangers in blood buy a farm. Then, too, if he intended the down payment on the Howser farm as a gift, why would he have been making inquiries as to how the deed was drawn? Howser testified that Johnson told him he wanted to help him buy a place, which he did, but arranging for the down payment of $2,500 would not of itself constitute a gift. Mrs. Howser's testimony on the point is the strongest in the record, but she is far from being an uninterested party; so, as indicated, we are disposed to follow the chancellor's ruling to the effect there was no gift.

It does not follow, however, that Johnson is entitled to a one-half interest in the land. It is clear from the record that either immediately before or immediately after the execution of the deed he knew it had been made to Howser only. Therefore, in view of KRS 381.170, there can be no resulting trust in his favor. Johnson advanced part of the consideration and permitted Howser to be made the sole grantee, so the deed is valid as against him. McFarland v. McFarland, 263 Ky. 434, 92 S. W. (2d) 785, and Union Bank & Trust Co. v. Rice, 279 Ky. 629, 131 S. W. (2d) 493. But this does not mean that Johnson may not assert his claim against Howser for the money advanced, though, he is not en-titled to a lien on the land. Bolling v. Pikeville National Bank, 213 Ky. 317, 280 S. W. 1090; 33 Am. Jur., Liens, section 22, and Annotation in 60 A. L. R. 1240. It has long been held that, while the aforementioned statute forbids a resulting trust, if there be no purpose to de-fraud, and the party receiving title refuses to execute the trust or return the money, an action will lie upon the

implied promise raised by law to refund the money. Martin v. Martin, 5 Bush 47; Deposit Bank v. Rose, 113 Ky. 946, 69 S. W. 967, 24 Ky. Law Rep. 732; Brooks v. Brooks, 104 S. W. 392, 31 Ky. Law Rep. 969.

Under the circumstances shown in this record Johnson is entitled to a money judgment for $2,500 against Howser, and we are reversing the judgment with directions that it be set aside and that one be entered in accord with this opinion.