## Mitchell v. Smith.

(Decided October 25, 1929.)

254

NOGGLE & GRAHAM for appellant.

W. F. MILBY, L. M. HENDERSON and C. O. MILBY for appellee.

OPINION OF THE COURT BY COMMISSIONER TINSLEY—Affirming.

The parties to this action are adjoining landowners, residing in Green county, Kentucky. The appellee, as plaintiff below, instituted this action against the appellant, as defendant below, alleging that he was the owner and in the actual possession of a described tract of land bordering on the southeast side of Pittman creek in Green county, which stream, it was alleged, drains a large territory in both Taylor and Green counties; that bordering plaintiff's land the stream has a swift current and considerable fall, is frequently swollen, and overflows its banks, and the bottom lands bordering it, including plaintiff's bottom land; that at a point in the creek between plaintiff's lands and defendant's lands, on the opposite side of the creek from his land, the defendant had "unlawfully, wrongfully, and without right constructed a stone wall in the creek 40 feet long, 4 feet wide, and 3½ feet thick, leading out from the bank of the creek on defendant's side into the bed or channel of the stream, at an angle of about 45 degrees down the creek to a point within 10 or 12 feet of the southeast bank of the creek; that said wall was constructed on the —— day of September, 1927, without plaintiff's knowledge or consent"; and that as soon as plaintiff "learned of said wall he notified and requested defendant to remove it;" that, "if defendant is permitted to maintain the wall in the creek, it will cause the creek to change its course, so as to run into, over, and across and wash plaintiff's land, to his great and irreparable injury and damage." He prayed that the court by mandatory injunction require the defendant to remove the wall from the bed of the creek, for his costs, and all proper and equitable relief.

By his answer the defendant traversed the allegations of the petition, and then alleged "that he is the owner of the land on the opposite side of the creek from where said wall is located, and that the building of said wall will not affect the plaintiff's land, if he owns any

land, in any way; that he built the stone wall complained of for the protection of his land on both sides of the creek." After filing the answer, plaintiff moved the court to require the defendant to make the second paragraph of his answer more definite and certain, by giving a description of the land he claimed to own on the southeast side of the creek, and defendant then filed an amendment giving a description of a tract in the bend of the creek on the southeast side containing 3.9 acres. After completing the issues, and taking proof, the court, by its judgment, granted plaintiff the relief sought, required the defendant to remove the wall from the creek bed, and he has appealed. We are informed in the briefs that the wall has been removed, and that appellant prosecutes this appeal solely because the court did not adjudge him the owner of the land claimed in his amended answer.

1. The answer of the defendant is not styled "Answer and Counterclaim." The paragraph wherein he sets up that he is the owner of the land on the opposite side of the creek from where the wall was built is not numbered as a second paragraph of the pleading, and by it he seeks no affirmative relief. The prayer is: "Wherefore he prays that the petition be dismissed, for his costs, and all proper relief." The only relief he sought or was entitled to, under that pleading, if sustained by the proof, was a dismissal of the petition and a judgment for his costs. It has been said that a counterclaim is really an independent action, and every allegation necessary to constitute an independent action is necessary to constitute a good counterclaim (Commonwealth v. Barker, 126 Ky. 200, 103 S. W. 303, 31 Ky. Law Rep. 648; Hatfield v. Richmond, 177 Ky. 183, 197 S. W. 654); and an answer, to be sufficient as a counterclaim, must allege facts sufficient to constitute a good cause of action in favor of the defendant against the plaintiff, as if the pleading were an original petition (Cross v. Snyder's Administratrix, 164 Ky. 370, 175 S. W. 641; Crabtree Coal Mining Co. v. Hamby's Adm'r, 90 S. W. 226, 28 Ky. Law Rep. 687). No judgment may be maintained in favor of the defendant on a counterclaim set up in an answer, where the caption of the answer does not contain the word "counterclaim," unless the defect be waived. Civil Code of Practice, sec. 97; Williams v. Capital Mining Co., 153 Ky. 772, 156 S. W. 409; Wilson, etc., v. Chappel, etc., 224 Ky. 130, 5 S. W. (2d) 882. And a countedclaim, to be

available, must contain a prayer for the relief which the defendant considers himself entitled on the counterclaim. Taylor v: Wilson, 182 Ky. 592, 206 S. W. 865. Under these rules of pleading and practice, appellee was not entitled to be adjudged any affirmative relief and the court committed no error in refusing it.

2. But, if the pleadings were sufficient, the proof is insufficient to show paper title in appellant, or such an adverse possession of the land in controversy as would mature title in him. Prior to the year 1856, the lands claimed by each of the parties were in one tract—the property of John Mitchell. By his will John Mitchell devised the land to his sons, John B. Mitchell and Josiah Mitchell. These devisees, by a deed executed inter partes, partitioned the land, Josiah taking on the northwest side of the creek and John B. taking on the southeast side. The portion alloted to Josiah finally vested in appellant's father. After his death, under a judgment of the Green circuit court in an action brought to settle his estate, his land was sold and purchased by appellant. A deed was made to him by the master commissioner of the Green circuit court, and it is the deed under which he now claims. The eleventh line of that deed calls to run "S. 45° E. 74 poles to a stake on the S. E. side of Pittman creek." The point called for at the end of this line is agreed on by the parties to this action; there is no dispute as to where it is; it is appellee's corner also. The next two calls of appellant's deed—the twelfth and thirteenth lines—are "thence up the creek N. 45° E. 32 poles to a stake in the creek; thence up the creek, with the center thereof, to the beginning." The corresponding calls of appellee's deed, and which are on the reverse courses of those of appellant's deed, are: "Thence down the creek as it meanders S. 75° W. 41 poles; N. 63° W. 25½ poles; N. 80° W. 70 poles; S. 2½° W. 17 poles; S. 44° W. 26 poles; S. 25° E. 12 poles; S. 45° W. 32 poles."

In locating appellant's boundary, and in order to include the land in controversy therein, when his surveyor reached the common corner at the end of the line "S. 45° E. 74 poles," and which is the "stake on the southeast side of Pittman creek," he ran the next line— the twelfth—by allowing 5 degrees variation, N. 50° E. 32 poles, across the land claimed by appellee, and extended the line to 65 poles in order to reach the creek

again. Appellant seeks to sustain this location and extension of that twelfth line on the ground that many years ago there was a slough or lagoon running across the land at the place and in the same general direction of this line, as located by his surveyor, and contends that this slough or lagoon is the "creek" called for at the end of the 32 poles. This location, however, ignores the next call, "thence up the creek, with the center thereof." The point called for at the end of the line N. 45° E. 32 poles, "a stake in the creek," and the succeeding call, "thence up the creek with the center thereof," are most persuasive that from the common corner on the southeast bank of the creek the remaining lines of appellant's boundary follow the creek. The great preponderance of the testimony is to the effect that the slough, or lagoon, referred to by appellant, was merely a depression in the low ground near the creek, caused by washouts during high water and freshets, and that it was not a defined channel of the creek, or that the creek ever flowed through it except during high water; and appellant testified that about 35 years ago, appellee's father filled this slough or lagoon with logs and brush, and that he (appellant) helped to do the work.

There is no evidence that the channel of the creek has changed, or that it now flows except in what has been its bed for generations. The map filed with appellant's deposition shows that on the course of approximately N. 45° E., and at the distance of approximatedy 27 poles from the common call on the southeast bank of the creek, the creek makes an abrupt curve or bend to the northwest. This is, we think, the point called for at the end of the line "N. 45° E. 32 poles to a stake in the creek." The calls of the prior conveyances in each party's chain of title, the location of the creek, and the physical facts and circumstances, confirm it. Therefore, under the well-established rule that course and distance both yield to natural objects, having the twelfth line calling to run N. 45° E. 32 poles to a stake in the creek, the course should be changed and the distance shortened from 32 to 27 poles (82½ feet), so as to reach the creek at this bend, and the corner fixed in the creek as it now runs and is located. From this point the remaining calls of appellant's deed, as well as the calls of appellee's deed, follow the creek "in the center thereof" to appellant's beginning corner.

The testimony shows that, just prior to the execution of appellee's deed, the boundary was run out by a surveyor, and the lines were run right along the creek; that appellant's father was present and interposed no objection of the inclusion of the land now in controversy within the survey then being made for appellee's boundary. It is further shown by Miss Eliza Mitchell and Mrs. J. B. Penick, sisters of appellant's father and daughters of Josiah Mitchell, appellant's remote vendor, that they were reared on the land now owned by appellant, and that their father owned on the north side of the creek, and his brother, John B. Mitchell, under whom appellee claims, owned on the south side of the creek, and that the creek was the line between them.

There is no proof to sustain appellant's plea of title by adverse possession. If, as he contends, his father claimed the land in controversy, the only use he ever made of it was to pasture it occasionally and cultivate it a few years. By appellant's own testimony, at the time he gave his deposition, it had been "from 15 to 20 years" since his father had used any part of the land in controversy for any purpose, and appellant himself, since he acquired the land from his father's estate, has never had the possession, use, or control of any part of it. On the contrary, appellee and his father have used and cultivated it continuously for more than 20 years.

No complaint is made on this appeal of the action of the lower court in requiring the removal of the stone wall erected by appellant, and which brought about this litigation.

Wherefore the judgment is affirmed.