## Kelly v. Kelly et al.

Oct. 27, 1944.

848

R. S. Rose and R. L. Pope for appellant.

J. C. Baker for appellees.

Opinion of the Court by Stanley, Commissioner—
Reversing in part, affirming in part.

On September 14, 1933, Millard L. Kelly conveyed the property on which he was living to his brother, Marion D. Kelly, and the deed was promptly recorded. Millard L. Kelly married the appellant, Nona Kelly, later in the year. They continued to live on the property until his death on April 12, 1941. After the affirmance of a judgment denying Mrs. Kelly the right to recover for expenditures made by her in improving the property, Kelly v. Kelly, 293 Ky. 42, 168 S. W. 2d 339, 148 A. L. R. 331, she filed this suit against her deceased husband's brother, the grantee, and her stepson, Bernice M. Kelly. It was resolved into a question of whether she is entitled to dower or homestead in the property. Her right is rested upon two grounds: (1) That her husband's conveyance to his brother was fraudulently made for the purpose of defeating his creditors and under an agreement that the grantee would re-convey the property, so that her husband was the true and equitable owner of the property at his death; and (2) that it had in fact been re-conveyed by an unrecorded deed which was destroyed by her stepson. There is also raised the third question of champerty invalidating a deed from the brother to the son, or to a trustee for him.

The court adjudged the widow had no right of any kind in the property and awarded judgment against her in favor of the son for $300. rental.

There may be a question whether a widow who had married the deceased after a conveyance has the right to have the deed of her husband set aside as having been made with the intention of defrauding his creditors under Kentucky Revised Statutes 378.010; but the parties have not raised the question and we pass it by and decide the appeal on the merits.

The plaintiff's evidence was that her husband was surety on some notes which had passed into the hands of the Reconstruction Finance Corporation and that he had received letters from it, dated September 12, 1933, advising him that he was being looked to for payment and should call at a bank in Harlan for an interview. The notes aggregated $14,000. The lawyer who drafted the deed on September 14th testified that Kelly had told him he was surety on some notes and wanted to transfer his property so he would not have to pay the notes. There was no objection to the testimony of the attorney. On the other side the evidence is that Kelly was solvent and there was but little, if any, danger that he would ever have to pay anything on the notes, which were secured by a mortgage on real estate. His son, Bernice Kelly, was then in the United States Military Academy at West Point. His brother, Dan Kelly, testified that Millard told him that he wanted his son to have the home place; that he was young and did not have much knowledge of the value of the property so that he would convey it to his brother Millard to hold for his son until he was old enough to appreciate and take care of it. Clearly, the evidence is not sufficient to prove the conveyance was made to defraud creditors or to establish a trust based upon an agreement to reconvey.

We consider the issue of a re-conveyance to the deceased husband. The widow testified that several days after the death of her husband she had taken his papers from a desk and piled them on the floor for examination. The son picked up a deed and said: "Here's a deed from M. D. Kelly to Millard Kelly my dad." She read a part of it. It had been drawn by E. L. Morgan, an attorney, and acknowledged either by him or his stenographer; also the lawyer had told her he had drawn the deed. Her father corroborated her although he relates the son's explanation in different words. There is some contradiction between the two witnesses as to the time he was there and other circumstances. The son had said in their presence that he was going over in Virginia to see his uncle Marion and the widow testified he took the deed with him. George Sweeden testified that he had worked on the place off and on and that one time while he was taking out or unstopping a clogged sewer it began raining and he accepted Kelly's invitation to come into the house. Kelly was then looking over a lot

850

of papers and said something about having been "left in the middle by Doctor Lewis," but that Marion had deeded his place back to him, and showed the witness such a deed. His testimony does not ring very clear and he was impeached as a man of bad reputation. It is significant that Mrs. Kelley made no claim such as this when prosecuting her previous suit to recover the value of improvements she had made to the property.

On the other side, the son, now Colonel Kelly, categorically denied the instance related by Mrs. Kelly and her father and the statements attributed to him. Nothing like that occurred. M. D. Kelly deposed that he had never executed such a deed. The attorney also denied having said he had prepared such a deed and had no recollection of having drawn the instrument. His stenographer testified that she had not taken any acknowledgement and could not have done so for she was not a notary public or qualified to take acknowledgments to deeds.

To establish title to real estate by oral evidence of the existence of a lost or destroyed deed requires clear and convincing proof. Arrington v. Sizemore, 241 Ky. 171, 43 S. W. 2d 699. We think the court was right in not accepting the evidence in this case as proving the re-conveyance of the property.

On November 20, 1942, M. D. Kelly and wife conveyed this property to Dan Kelly as trustee of Bernice M. Kelly. The latter explains that he purchased the property from his uncle because he was his father's only heir and wanted the old home place to be kept in the immediate family and pass down to his children. His Uncle Dan Kelly is acting as his agent and representative during the war while he is on duty as an officer in the army. While there is no plea covering the claim, the appellant insists that this conveyance is champertous and void since it was made when she was in possession of the property, holding adversely under color of title. Ordinarily, the possession of a widow is not adverse to the husband's heirs and devisees. At most, the widow was claiming only the right of dower or a life estate, and possession of a life tenant is not adverse to the remaindermen in the absence of a renunciation and notice. Forman v. Gault, 236 Ky. 213, 32 S. W. 2d 977. Therefore, there is no merit in this point.

The son's responsive pleading to the petition of the widow is styled merely: "Separate answer of Major B. M. Kelly." In the body of the pleading it is alleged "for further answer and counter-claim" that the plaintiff, Mrs. Nona Kelly, had been in possession of the property, although notified to move, and that she was indebted to the defendant in the sum of $300 for six months' rent. Judgment for that sum over against her was prayed and, as we have said, was awarded him. Section 97, subsection 4, of the Civil Code of Practice is, in part: "A defendant shall not have judgment upon a set-off or counter-claim, unless the caption of the answer contain the words, answer and set-off, or the words, answers and counter-claim." No reply was filed to this pleading and the plaintiff in her evidence seems to have ignored the matter of rents, so she did not waive the protection of the technical right given her by the Code. A counter-claim is regarded as an independent action and it is necessary that the pleading be styled as such to constitute a good counter-claim. Without it or without a waiver by joining issue, the plaintiff is secure from a judgment on the pleading. Williams v. Capital Mining, Lumber & Oil Co., 153 Ky. 772, 156 S. W. 409; Mitchell v. Smith, 231 Ky. 253, 21 S. W. 2d 279.

The judgment is reversed in so far as it awards judgment for rents and is affirmed in other respects.

The record must be condemned. It fails to comply with Rule III of this Court requiring the Clerk to copy depositions in the order in which they were taken. Exhibits are omitted. The index is confusing and disconcertingly erroneous. On this account the Clerk's fee will be reduced by $20. We may observe also that the amount of the fee for making the transcript as endorsed on the record seems excessive, but the parties have not asked for a retaxation.