RENDERED: AUGUST 16, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0802-MR

ISLAMIC CENTER OF NORTHERN
KENTUCKY, INC.                                           APPELLANT

APPEAL FROM BOONE CIRCUIT COURT
v.          HONORABLE JAMES R. SCHRAND, II, JUDGE
ACTION NO. 20-CI-00683

AHMAD HEMAYA                                     APPELLEE

AND

NO. 2023-CA-0873-MR

AHMAD HEMAYA                         CROSS-APPELLANT

CROSS-APPEAL FROM BOONE CIRCUIT COURT
v.          HONORABLE JAMES R. SCHRAND, II, JUDGE
ACTION NO. 20-CI-00683

THE ISLAMIC CENTER OF
NORTHERN KENTUCKY, INC.                       CROSS-APPELLEE

** ** ** ** **

BEFORE:  CALDWELL, COMBS, AND EASTON, JUDGES.

EASTON, JUDGE:  Both sides appeal from the circuit court's determinations that Amad Hemaya ("Hemaya") was an independent contractor when he served as Imam[1] for the Islamic Center of Northern Kentucky, Inc. ("ICNK"), that the contract with Hemaya was permissibly terminated, and that ICNK still owed Hemaya $2,500 under the contract between them.  Having reviewed the record, we find no error and affirm the Boone Circuit Court.

## FACTUAL AND PROCEDURAL HISTORY

For years, volunteers provided services for ICNK before the contract between ICNK and Hemaya was signed in August of 2019.  ICNK wanted to hire someone to serve as Imam to provide specified services, including prayers at the mosque.  The position was part-time.[2]  The original one-page contract listed duties for Hemaya, including services at the mosque.  The contract also listed general

---

[1] Imam is the title of a religious leader of the Islamic faith whose duties include leading prayers at a mosque.  *See* MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/imam (last visited Aug. 5, 2024).

[2] Hemaya may have been bi-vocational.  Testimony indicates some connection with construction work, and Hemaya spoke of prior experience in managing rental properties.

duties such as helping board members implement policies and helping community members with special questions and fatwas.[3]

An addendum altered some of Hemaya's duties. Ultimately, for the months of March through May 2020, Hemaya was to be paid $2,500 per month. An additional compensation of $2,500 was to be provided for Ramadan.[4] The contract is entitled "Independent contractor [sic] Agreement," and ICNK paid Hemaya through the use of IRS Form 1099 rather than through Form W-2.

Although Hemaya looked for a place to live close to the mosque, he lived in Ohio about an hour away while he served as Imam at ICNK. This commute made it difficult for Hemaya to attend to all public prayers. ICNK recognized some flexibility for Hemaya to miss some prayers. Hemaya particularly attended to Friday prayers, but ICNK presented some evidence of non-attendance for other prayers during the week.

Early on in the contract term, Hemaya made a trip to Russia for about a week. Hemaya insists ICNK knew about this. ICNK insists it did not. ICNK

---

[3] A *fatwa* is a legal opinion or decree handed down by an Islamic religious leader. *See* MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/fatwa (last visited Aug. 5, 2024).

[4] The ninth month of the Islamic calendar, Ramadan, is a sacred time for Muslims. *See* MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/ramadan (last visited Aug. 5, 2024). In 2020, Ramadan was from April 23 to May 23.

did not pay for this trip. The point of the evidence about the trip is the flexibility the contract provided as to Hemaya's duties.

When the COVID-19 Pandemic arrived in March of 2020, the public health crisis interrupted services at the mosque. No services took place at the mosque between March 21 through June 4, 2020. This was not Hemaya's decision to make. ICNK was aware that some mosques instituted remote services, but ICNK declined to do so. Hemaya was willing to perform some services remotely and says he did what work he could during the closure of the mosque.

For example, Hemaya spoke of his interaction with one of the witnesses at the trial. This witness communicated with him by text. Hemaya provided advice to this individual as an Imam would be expected to do.

Despite the effects of the pandemic, ICNK paid Hemaya for the two months of April and May 2020, but it now seeks return of that $5,000. Hemaya was not paid the extra $2,500 for Ramadan. Hemaya sought not only that compensation but also argued that he was an employee and that ICNK violated wage and hour laws applicable to his employment.

Some other problems developed during this relationship. Before the arrival of COVID-19, a volunteer teacher at the Mosque complained of Hemaya's yelling and belligerence toward her in front of the children at the school. Even before the COVID-19 interruption, ICNK says Hemaya typically attended to his

-4-

duties on Fridays but not always on other days. On one occasion in June 2020, Hemaya allegedly took a "selfie" in front of the congregation. If the phone had been pointed to take a photo of the congregation, which Hemaya denies, this act could be seen as offensive, and the incident reportedly frightened some of the attendees. Hemaya gave some confusing and potentially inconsistent answers about whether he had taken the offending picture.

ICNK suspended Hemaya after the taking of the picture. ICNK wanted to hear Hemaya's side of the story. Hemaya did not respond to the suspension and did not return to perform his duties under the contract. Ultimately, ICNK terminated the contract.

The circuit court conducted a bench trial on all issues. In a well-reasoned order, the circuit court determined that Hemaya was not an employee but rather an independent contractor. While Hemaya was not entitled to any relief under wage and hour provisions for employees, the circuit court found that Hemaya still performed at least some of his duties to the extent possible during the pandemic. The circuit court also concluded that any termination of the contract was justified. Still, Hemaya was entitled to the pay he received of which ICNK sought return as well as the additional Ramadan pay. The end result was a judgment in Hemaya's favor for $2,500. These appeals follow.

## STANDARD OF REVIEW

As these are appeals from a bench trial, the circuit court's findings of fact "may not be set aside unless clearly erroneous with due regard being given to the opportunity of the trial judge to consider the credibility of the witnesses." *Lawson v. Loid*, 896 S.W.2d 1, 3 (Ky. 1995). Findings of fact are not clearly erroneous if they are supported by substantial evidence. *Gosney v. Glenn*, 163 S.W.3d 894, 898 (Ky. App. 2005). "Substantial evidence is evidence, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person." *Id.* The circuit court's conclusions of law will be reviewed de novo. *Id.* Whether the facts as found by the circuit court support the determination of Hemaya as an independent contractor is a question of law. *Everett v. Edelen*, 672 S.W.3d 196, 200 (Ky. App. 2023).

## SUBJECT MATTER JURISDICTION

Because of the claims made and the ultimate small award, we first address subject matter jurisdiction. Subject matter jurisdiction cannot be provided by waiver, and this Court must evaluate subject matter jurisdiction even when the parties do not raise it. *Coffee v. Kehoe Rock and Stone, LLC*, 270 S.W.3d 902, 904 (Ky. App. 2008).

The district court has exclusive subject matter jurisdiction when "the amount in controversy does not exceed five thousand dollars ($5,000), exclusive of

interest and costs . . . ." KRS[5] 24A.120(1).  Initially, it appears that ICNK's claim did not **exceed** $5,000.  *See generally Dalton v. First Nat. Bank of Grayson*, 712 S.W.2d 954, 959 (Ky. App. 1986). The only item which arguably salvages subject matter jurisdiction for the Complaint is the claim for attorneys' fees.

Attorneys' fees are not typically recoverable as costs, but confusion has been created because some statutes allow recovery of such fees as a "cost," or they may be awarded as a separate item of damages.  *See Harris v. Camp Taylor Fire Protection Dist.*, 303 S.W.3d 479 (Ky. App. 2009).  ICNK's Complaint alleged no statutory authority for an award of attorneys' fees.  KRS 411.195 does not apply because the contract made no provision for the collection of such fees. And only rarely may such fees be awarded as a matter of equity.  *See Bell v. Commonwealth, Cabinet for Health and Family Services, Dep't for Community Based Services*, 423 S.W.3d 742, 749 (Ky. 2014).

We would like to say that the question is largely academic, but subject matter jurisdiction is indispensable for any court action.  Because ICNK could have made some argument for attorneys' fees making its damages more than $5,000, we find there was subject matter jurisdiction for the Complaint.  We remind counsel that a statement clearly illustrating subject matter jurisdiction should be in a pleading asserting a claim.

---

[5] Kentucky Revised Statutes.

The Counterclaim more clearly satisfied the requirement for subject matter jurisdiction of the circuit court because Hemaya claimed a right to continued pay during the term of the contract as well as a statutory right to attorneys' fees. A counterclaim is an independent claim which may provide subject matter jurisdiction regardless of any insufficiency of the initiating Complaint.[6]

The claims of the two pleadings overlapped. In any event, the circuit court had to determine the nature of the relationship and damages claimed by both sides, including claims to attorneys' fees. Subject matter jurisdiction being present, it was proper for the circuit court to proceed with the case.

## HEMAYA WAS AN INDEPENDENT CONTRACTOR

The primary question for both appeals is whether Hemaya was an employee or independent contractor. This required the circuit court to evaluate several factors. *Everett*, *supra*. We need not belabor this opinion with a recitation of the circuit court's analysis of this question. We have carefully considered the evidence presented during the trial. The factual findings of the circuit court are all supported by substantial evidence.

---

[6] *See Kelly v. Kelly*, 183 S.W.2d 805, 807 (Ky. 1944). Kentucky has apparently not had occasion to answer the precise question of jurisdiction if the initial Complaint fails to provide it, but our neighboring states have held that jurisdiction over the counterclaim alone suffices. *Johnson v. Memphis Guitar Spa, LLC*, 600 S.W.3d 348 (Tenn. App. 2019): *Health Cost Controls v. Sevilla*, 718 N.E.2d 558 (Ill. App. 1999).

We summarize that, as a religious leader, Hemaya had certain tasks assigned to him, but he was not controlled in the details of this work beyond those imposed by his own views of his work as an Imam. The employment was part-time and consisted of a limited number of tasks. Hemaya worked part time and was reportedly still seeking full-time employment elsewhere while he served at ICNK.

The IRS views those who serve as religious leaders differently. They do not pay FICA,[7] and the IRS recognizes that religious congregations may retain spiritual leaders as independent contractors.[8] With consideration of all the circumstances, the circuit court correctly concluded that Hemaya was an independent contractor.

ICNK then insists that it owed nothing to Hemaya for April and May of 2020, which included the month of Ramadan. To support its argument, ICNK cites only one case, *Louisville & Nashville Railroad Company v. Crowe*, 160 S.W. 759 (Ky. 1913). ICNK believes this case supports its argument that an independent contractor is owed no pay if he cannot perform his duties because of a change in the law.

---

[7] Federal Insurance Contributions Act.

[8] *See generally* IRS 2023 Form 517.

First, *Crowe* did not involve an independent contractor. Mr. Crowe conveyed a strip of his land to the railroad. *Id.* at 759. In exchange, he was promised an annual pass for the rest of his life for passage on the railroad between Scottsville, Kentucky, and Gallatin, Tennessee. *Id.* As part of Theodore Roosevelt's trust-busting efforts, Congress later passed the Hepburn Act to expand the powers of the Interstate Commerce Commission with respect to railroads. One of the results of this law was to eliminate passes like the one Mr. Crowe had been promised. *Id.* at 760.

The railroad then argued they could no longer honor their part of the contract with Mr. Crowe. *Id.* The court in *Crowe* grappled with what to do about the lawfully imposed breach of the contract. The court ultimately held that Mr. Crowe must receive the benefit of his bargain. The railroad owed him damages which resulted from the inability to provide him with the promised pass. *Id.* at 761.

It is difficult to see how this venerable but outdated case supports ICNK's view that they owe nothing to Hemaya because of the limits ICNK chose to place on services in response to the public health options made necessary by the COVID-19 pandemic. Hemaya was willing to perform services and provided at least some evidence that he provided some services (communications providing advice to an ICNK member) during the pandemic months.

## CONCLUSION

The circuit court correctly concluded that Hemaya was an independent contractor. While the ICNK's decisions during the COVID-19 pandemic interrupted Hemaya's ability to perform some of his work, Hemaya was willing to perform some of his duties as permitted and presented evidence that he did provide some of the service not required to be provided on-site at the mosque. Given the history between the parties, the contract was properly terminated with Hemaya to receive only the additional $2,500 he had been promised. The Boone Circuit Court is AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT/CROSS-APPELLEE:

David H. Steele
Covington, Kentucky

BRIEF FOR APPELLEE/CROSS-APPELLANT:

Samual R. Nicholson
Louisville, Kentucky